In re Chris Patrick LaBONTE, and Susan Laura LaBonte, Debtors.

KEYSTONE AUTOMOTIVE WAREHOUSE, INC.; Diversified Vehicle Services, Inc.; and Martin G. Brown, Plaintiffs,

v.

Chris Patrick LaBONTE, Defendant.

Bankruptcy No. 80–20628.
Adv. No. 80–0212.

United States Bankruptcy Court,
D. Kansas.

Sept. 3, 1981.

Chris Patrick LaBonte, debtor/defendant.

Thomas G. Neff of Wallace, Saunders, Austin, Brown & Enochs, Overland Park, Kan., for debtor/defendant.

John F. Michaels of Ryder, Rose & Frensley, Kansas City, Mo., Joseph T. Carey of Dear, Yarnevich & Carey, Kansas City, Kan., for plaintiffs.

Henry W. Green, Leavenworth, Kan., trustee.

## MEMORANDUM OPINION

BENJAMIN E. FRANKLIN, Bankruptcy Judge.

This matter came on for hearing on March 26 & 27, 1981. Plaintiffs,[1] Keystone Automotive Warehouse, Inc. (Keystone); Diversified Vehicle Services, Inc. (DVS); and Martin G. Brown (Brown); appeared by and through their attorney of record, John F. Michaels of the firm of Ryder, Rose & Frensley; and local counsel, Joseph T. Carey of the firm of Dear, Yarnevich & Carey. Defendant, Chris Patrick LaBonte (debtor) appeared by and through his attorney of record, Thomas G. Neff, of the firm of Wallace, Saunders, Austin, Brown & Enochs.

## NATURE OF CASE

Plaintiffs object to debtor-defendant's discharge on two (2) grounds: (1) failure to keep and preserve books and records from which his business transactions and the financial condition of his business can be ascertained (11 U.S.C. § 727(a)(3)); and (2) failure to satisfactorily explain a loss of assets (11 U.S.C. § 727(a)(5)). Specifically, plaintiffs allege that debtor's business, LaBonte's Bumper to Bumper, Inc. (hereinafter referred to as Bumper), lost some $37,000.00 [2] worth of inventory over a period of 18 months through fraudulent transfers or fraudulent write-offs. Plaintiffs also allege that neither the debtor's explanations nor Bumper's books and records satisfactorily explain what happened to the missing inventory.

Defendant-debtor alleges three things: (1) that the plaintiffs are without standing to bring this objection to discharge because the plaintiffs are neither trustees nor creditors of the debtor as required under § 727(c)(1); (2) that any purported write-offs of inventory were done by plaintiffs, during the period that they controlled debtor's bookkeeping (for Bumper); and (3) that the one adjustment made by the debtor to Bumper's books was necessitated by plaintiffs' erroneous bookkeeping practices.[3]

## FINDINGS OF FACT

After examining the stipulations, pleadings and exhibits, and considering the testimony of witnesses and the arguments of counsel, the Court finds as follows:

1. That this Court has jurisdiction over the parties and the subject matter pursuant to 28 U.S.C. § 1471, and venue is proper pursuant to 28 U.S.C. § 1473.

2. That on February 22, 1978, debtor granted Keystone a security agreement (Pl. Ex. # 1) in consideration of the establishment of an open account with Keystone. The security agreement covered: all tools,

---

1. Plaintiffs are related. Brown is president of Keystone and DVS, which are located at the same address.

2. It is unclear where plaintiffs get this $37,000.00 figure. Inventory valuations were documented on monthly balance sheets from March, 1978, to May, 1980. These valuations show a high of $81,107.60 in January, 1979, and a low of $51,000.00 in inventory from December, 1979, to May, 1980. (Pl.Ex. # 2). Perhaps plaintiffs are referring to these differences in valuations. Plaintiffs also seem to refer to other discrepancies: Inventory valuation of May, 1980 was $51,000.00; inventory valuation on July 3, 1980 petition was $47,000.00; and a final physical inventory taken jointly by the parties in August of 1980 showed inventory at an agreed value of $38,530.15. (Stip. # 8).

3. That adjustment occurred in December, 1979. Two balance sheets are dated December 31, 1979. One shows inventory at $76,077.59 and the other shows it at $51,000.00.

equipment, fixtures, and inventory (including present and after acquired property and all proceeds and account receivables arising therefrom); contract rights, account receivables, choses in action, chattel paper, instruments, and deposits (all present and after acquired); and policies and certificates of insurance. Pursuant to the security agreement, debtor promised in pertinent part, as follows:

"5. *Debtor has heretofore furnished Secured Party with balance sheets, earnings statements, and other financial data which fairly represent the financial condition of Debtor as of the date and for the period shown thereon and Debtor has heretofore maintained and will hereafter at all times maintain accurate books and records covering the Collateral.*

*6. ... All loss or depreciation in value of inventory shall be immediately reflected in the value of inventory determined hereunder ...*

3. That on March 1, 1978, Ranchmart Bank & Trust (Ranchmart) loaned defendant $60,000.00 and took a security interest in all furniture, fixtures, and inventory of Bumper. (Stip. # 1). Plaintiff, Brown, also executed a guarantee of debtor's promissory note to Ranchmart, on March 1, 1978. (Pl.Ex. # 2).

4. Further, on March 1, 1978, debtor executed an auto parts jobber agreement (Agreement) with Keystone. (Pl.Ex. # 3). Such agreement provided in pertinent part as follows:

"3. (a) *Accounting System* —

*Company (Keystone) will assist Jobber (debtor) in setting up an accounting system that will provide a monthly analysis of Jobber's business.*

\* \* \* \* \* \*

(h) *Inventory Management* —

*Company will furnish a tailored classification guide for each Jobber which will enable the Jobber, if properly used, to carry a minimum inventory and achieve the highest possible shipping percentage*

\* \* \* \* \* \*

(k) *Purchase Records* —

*Company will provide Jobber with a key line recap of his monthly purchase and core history.*

\* \* \* \* \* \*

*6. Both parties hereto agree, and it is expressly understood, that Jobber retains ownership and responsibility for its own business operation. Jobber is free to purchase and price its merchandise according to its independent business judgment. Jobber has no authority to represent Company in any capacity and in no event is either party to be considered the agent of the other."*

5. That from March of 1978 to October of 1978, plaintiff, Keystone, did Bumper's bookkeeping. Keystone kept a running tab of the store's inventory. Keystone charged debtor for this service.

6. That on January 10, 1978, DVS leased premises at 6224 Nieman Road, Shawnee, Kansas, from Nieman Plaza Development Company for a term of five years. On September 22, 1978, DVS validly subleased these premises for the remainder of the five-year term to the debtor. (Stips. # 3–6). The sublease gave DVS the right to directly and independently enforce the terms of the rental obligations.

7. That after October of 1978, debtor took over the task of Bumper's bookkeeping. Inventory continued to be evaluated on a monthly basis. Before December of 1979, the inventory valuations fluctuated month-to-month. On December 31, 1979, two balance sheets were prepared. One showed inventory at $76,077.59 and the other showed it at $51,000.00. From January, 1980, to May, 1980, inventory remained stable at $51,000.00. (Pl.Ex. # 12). Then, on the debtor's bankruptcy petition of July 3, 1980, inventory was estimated at $47,000.00. In August of 1980, the parties took a joint physical inventory and put an agreed value of $38,530.15 on the inventory. (Stip. # 8).

8. That on July 3, 1980, debtor filed two bankruptcy petitions. One Chapter 7 peti-

tion he filed jointly with his wife and was entitled "Chris Patrick LaBonte and Susan Laura LaBonte, Case No. 80–20628". The other Chapter 7 petition he filed on behalf of his business and was entitled "LaBonte's Bumper to Bumper, Inc., Case No. 80–20629".

9. That the trustee did not assume or reject the unexpired sublease within the requisite sixty days (11 U.S.C. § 365(d)(1)), and thus, the sublease was deemed rejected. Plaintiff, Keystone, paid the accrued rent and maintenance charges from July of 1980, to October of 1980, in the amount of $4,897.88. (Pl.Ex. # 8).

10. That pursuant to an Order of this Court dated October 6, 1980, the trustee abandoned all furniture, fixtures, inventory, machinery and equipment of Bumper because the property was subject to perfected liens greater than the fair market value of said property.

11. That on October 22, 1980, Brown paid the $15,400.44 balance due on the $60,-000.00 loan to debtor from Ranchmart. The payment was made by check drawn on the account of Valtex, Inc., d/b/a Midnite Auto Parts at 6224 Nieman Road, Shawnee, Kansas. The check was for a total of $47,082.45 (the $15,400.44 balance due on note and $31,682.01, balance due on inventory) and was signed by the controller of Keystone.[4]

## CONCLUSIONS OF LAW

### I.

The threshold issue, raised in debtor's Motion to Dismiss plaintiffs' complaint for failure to state a claim, is whether or not plaintiffs are creditors, such that they are proper parties to object to the debtor's discharge under § 727(c)(1). Section 101(9) defines creditor as an entity with a claim arising at or before the time of the order of

relief. Section 101(4) defines claim as a right to payment or equitable remedy for breach of performance (where such breach gives rise to a right to payment). Even if the right is disputed, unmatured, unliquidated or contingent, it is a claim within the meaning of § 101(4).

█ Brown guaranteed debtor's $60,-000.00 promissory note to Ranchmart. As the legislative history of § 101(9) points out:

"... *A guarantor of or surety for a claim against the debtor will also be a creditor, because he will hold a contingent claim against the debtor that will become fixed when he pays the creditor whose claim he has guaranteed or insured.*" Notes of Committee on Judiciary, Senate Report # 95–989, U.S.Code Cong. & Admin.News, 1978, pp. 5787, 5808.

Thus, the Court finds that Brown, as a holder of a contingent claim at the time of the order for relief, was a creditor within the meaning of § 101(9).

The Court further finds that Brown's claim became fixed when he paid the balance due on the note on October 22, 1980.

█ DVS, pursuant to the terms of its sublease to debtor, had a right to enforce the terms of the sublease, independently of the lessor. Thus, DVS had a right to an equitable remedy for breach of performance of the sublease. Here the sublease was breached when it was deemed rejected, under § 365. Section 502(g) provides that where a lease is deemed rejected, the claim arising from the rejection will be treated as if it arose before the date of the filing of the petition. Thus, the Court finds that DVS is a creditor within the meaning of § 101(9).

█ Keystone granted the debtor an open account on February 22, 1978, and

---

4. Although Brown did not sign the check and although the check was not drawn on the account of Brown, this Court finds that the payment was in fact authorized by Brown.

Brown originally guaranteed the note, as president of Keystone. Therefore, the fact that he paid off the note by a check drawn on a sister company of Keystone is of no import.

took a security interest in the property of Bumper. Debtor disputes the status of this debt. However, this Court finds that the fact that a right to payment is disputed is immaterial; and, that it is still a claim under § 101(4), thus making Keystone also a creditor within the meaning of § 101(9).

The Court therefore finds that all three plaintiffs are creditors, and they were proper parties to object to the debtor's discharge, under § 727(c)(1).

## II.

The second issue is whether or not the debtor failed to keep books and records for Bumper such that the debtor's discharge should be denied under § 727(a)(3).

■ Section 727(a)(3) of Title 11 states that the debtor should be granted a discharge, unless—

> "*(3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case;"*

This section, like its predecessor (section 14) is designed to protect the creditors' interests by placing on the debtor the responsibility

> "*. . . to take such steps as ordinary fair dealing and common caution dictate to enable the creditors to learn what he did with his estate." Koufman v. Sheinwald,* 83 F.2d 977, 980 (1st Cir. 1936); *In re Martin,* 554 F.2d 55 (2d Cir. 1977).

A denial of discharge is a harsh remedy, entirely defeating the debtor's fresh start. Most courts liberally construe § 727(a)(3). Reasonable efforts are enough to comply with § 727(a)(3). It has long been recognized in this Circuit that—

> "*. . . Records need not be so complete that they state in detail all or substantial-*

ly *all of the transactions taking place in the course of the business. It is enough if they sufficiently identify the transactions that intelligent inquiry can be made respecting them." Hedges v. Bushnell,* 106 F.2d 979, 982 (10th Cir. 1939).

The Court held in *Johnson v. Bockman,* 282 F.2d 544 (10th Cir. 1960), that whether intelligent inquiry can be made from the records depends on the time frame of the records, and the character and complexity of the business.

Here debtor operated a small corporation selling automobile parts. Most of the inventory was bought on credit; the plaintiffs allege that inventory was lost or written off from 1978 to 1980; the business could not be called unusually complex, and the pertinent books and records would be those for 1978, 1979 and 1980.

On November 20, 1980, the debtor turned over a wealth of information to plaintiffs in response to plaintiffs' Request of November 12, 1980, for Production, Inspection and Copying of Documents. Plaintiff, in turn, introduced many of these documents during the trial. Among them were the liability ledger (Pl.Ex. # 2A); license agreement between Keystone and Bumper (Pl.Ex. # 3); Bumper's guarantee of credit to Keystone (Pl.Ex. # 4); security agreement between Keystone and Bumper (Pl.Ex. # 5); Summary of Financial Records, including balance sheets for March, 1978, through May, 1980 (Pl.Ex. # 12); Sales Journal for June, 1980 (Pl.Ex. # 14); cancelled checks and stubs (Pl.Ex. # 15); Accounts Payable (Pl. Ex. # 16); Profit and Loss Statements (Pl. Ex. # 17); and Inventory Documents (Pl. Ex. # 18). The records generally covered the years 1978 through 1980.

The Court further finds that the defendant-debtor's financial condition can be reasonably ascertained from its monthly balance sheets, profit and loss statements and inventory valuations.

The Court further finds that the debtor's business transactions can be reasonably as-

certained from its accounts payables, monthly inventory valuations and cancelled checks.

■ Bankruptcy Rule 407 remains in effect under the Code. 4 *Collier on Bankruptcy* (15th Ed.) § 727.03(4). That rule provides that at a trial on a complaint objecting to discharge, the plaintiff has the burden of proving the facts essential to his objection; that is, the plaintiff must establish a prima facie case. *Home Indemnity Co. v. Oesterle*, 651 F.2d 401 (5th Cir. 1981).

■ The Court further finds that the plaintiffs have not sustained their burden of proving the facts essential to show a violation of § 727(a)(3). A bare allegation is not enough. In light of the information turned over to the plaintiffs by the defendant on a week's notice, this Court finds from the facts and circumstances set out herein that the defendant should be discharged and that the plaintiff has failed to sustain the burden of proof warranting denial of the discharge under 11 U.S.C. § 727(a)(3).

### III.

The third issue is whether or not the debtor has failed to satisfactorily explain any loss of assets, such that the debtor's discharge should be denied under 11 U.S.C. § 727(a)(5).

Section 727(a)(5) states that a debtor should be granted a discharge, unless—

*"(5) the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities;"*

As previously stated, Bankruptcy Rule 407 governs the burden of proof in a complaint objecting to discharge. That rule requires that the plaintiff establish a prima facie case by proving the facts essential to his objection by the preponderance of the evidence. Under § 727(a)(5), the plaintiff must first establish that a loss or shrinkage of assets actually occurred.

■ Plaintiffs attempt to present a prima facie case by pointing to discrepancies in inventory valuations; fluctuations in inventory value each month; a $25,077.59 discrepancy in inventory valuations in two balance sheets dated December 31, 1979; and fluctuations in inventory value between May of 1980 and August of 1980.

While these discrepancies may lead to a reasonable inference of some loss of inventory, this Court finds they are not enough to prevent the defendant's discharge in bankruptcy. The burden of proof in objections to discharge under the Bankruptcy Act of 1898 was governed by section 14(c). That section required the plaintiff to show reasonable grounds to believe that the debtor had violated any of the forbidden acts. Bankruptcy Rule 407 superseded § 14(c) under the old Act, and continues to apply to cases under the new Code. 4 *Colliers on Bankruptcy*, (15th Ed.) § 727.03(4). Rule 407 requires more than a showing of reasonable grounds, it requires proof of the facts essential to the objection.

The Court finds that the plaintiffs have not proven one essential fact, that is, any loss of inventory; and further, even if plaintiffs had proven a prima facie case, arguendo, the debtor has satisfactorily explained the discrepancies.

In *Johnson v. Bockman*, 282 F.2d 544 (10th Cir. 1960); the debtor's discharge was denied under the predecessor to § 727(a)(5) because the debtor had made *no effort* to explain a shrinkage of assets. In *Baum v. Earl Millikin, Inc.*, 359 F.2d 811, 814 (7th Cir. 1966); the debtor's discharge was denied under the predecessor to § 727(a)(5) because debtor's explanation was not supported by any tangible evidence. As that court said:

*"A 'satisfactory explanation' of a loss of assets to meet liabilities within the meaning of section 14(c)(7) of the Bankruptcy Act must consist of more than the vague, indefinite, and uncorroborated hodgepodge of financial transactions presented by the bankrupt in this case."*

In *In re Solari Furs*, 263 F.Supp. 658 (U.S.D.C. E.D.Mo.1967), the debtor's discharge was denied where debtor claimed $70,000.00 in inventory should really have been $35,000.00 because some items had been mistakenly included in the inventory. *No records were produced to substantiate* the claimed error. The facts in the instant case, however, are significantly different.

The Court finds that the debtor-defendant herein satisfactorily explained the discrepancies and pointed to tangible evidence to substantiate his explanations; the plaintiffs pointed to the discrepancy in inventory values on the two December 31, 1979 balance sheets; the debtor explained that it made an adjustment to the inventory valuation on that date because it discovered that plaintiffs' inventory valuations (which debtor had been relying on since plaintiffs kept the debtor's books from March to October of 1978) were wrong; and the debtor took a physical inventory and discovered that the real value of the inventory as of December 31, 1979, was $51,000.00, not $76,077.59, as shown in plaintiffs' accountings. The plaintiffs also pointed to monthly fluctuations in inventory valuations from March, 1978, to May, 1980. These fluctuations merely reflected monthly changes in the amount of inventory held for sale. Furthermore, the inventory value fluctuated each month during the time in which the plaintiffs were keeping the debtor's books.

There is one discrepancy that plaintiffs pointed to that debtor did not explain. That is the discrepancy in inventory values in May of 1980, July of 1980 and August of 1980.

The Court finds that although the debtor apparently could not explain those differences, that would not be fatal. In *Matter of Gibson*, 409 F.Supp. 399 (U.S.D.C. S.D. Miss.1971); an August 31, 1968 balance sheet showed inventory at $204,236.23, yet on debtor's September 1, 1968 petition, inventory was shown at $167,708.32. Debtor was given his discharge even though he couldn't explain the difference because: the debtor kept books and records from which his financial condition might be ascertained; and the debtor reasonably relied on his accountant.

The Court finds in the instant case, that although debtor was not able to explain the discrepancies in the final months of his business, he did keep sufficient books and records from which his true financial condition could be ascertained, and he reasonably relied on his present (and past) bookkeepers.

In light of the plaintiffs' failure to delineate what losses occurred and in light of the debtor's good faith efforts to explain away the plaintiffs' vague allegations, this Court finds that the debtor's discharge should not be denied under 11 U.S.C. § 727(a)(3) or § 727(a)(5). Therefore, the debtor's discharge should be granted.

THIS MEMORANDUM SHALL CONSTITUTE MY FINDINGS OF FACT AND CONCLUSIONS OF LAW UNDER BANKRUPTCY RULE 752 AND RULE 52(a) OF THE FEDERAL RULES OF CIVIL PROCEDURE.