In re Michael Alan BROWNING, Debtor.

Alan BROWNING, Plaintiff-Appellee,

v.

Michael Allen BROWNING, Defendant-Appellant.

Bankruptcy No. C-1-83-610.
Adv. No. 1-82-0353.
Related Case No. 1-82-01528.

United States District Court,
S.D. Ohio, W.D.

July 18, 1983.

---

Marc D. Mezibov, Cincinnati, Ohio, for plaintiff-appellee.

Sally A. Brock, Cincinnati, Ohio, for defendant-appellant.

## OPINION AND ORDER AFFIRMING THE BANKRUPTCY COURT'S FINDING OF NON-DISCHARGEABILITY

SPIEGEL, District Judge.

This is an appeal by the debtor, Michael Alan Browning, from the judgment entry entered by the Bankruptcy Court for the Southern District of Ohio, Western Division, declaring Browning's debt to the First National Bank of Ludlow, Kentucky, nondischargeable under 11 U.S.C. § 523(a)(2)(A).

Two issues are presented. The first, a legal issue, is the Bankruptcy Court's assumption that the co-signer of a loan has standing to seek an exception to discharge.

The second focuses on the factual findings of the Bankruptcy Court. Having reviewed the arguments of counsel and the record below, we conclude both that the legal assumption is correct and that the lower court's Findings of Fact are not clearly erroneous. Accordingly, we affirm.

Appellant, Michael Alan Browning purchased a 1980 Datsun in January 1980. In later 1980 or early 1981, Michael Browning began having financial problems and, in April 1981, sought advice from his father, appellee Alan Browning. The son and father decided to ask the First National Bank of Ludlow, Kentucky for a consolidation loan for $14,000 to cover all of Michael Browning's debts, including the loan for the Datsun. The Bank agreed to a loan of only $7,701.50, consolidating all of Michael Browning's debts except the car loan. Alan Browning co-signed the loan. Implicit in the Bankruptcy Court's Findings of Facts are that Alan Browning co-signed the loan to accommodate his son and to make it possible for the son to pay off his debts and that the father received no consideration for co-signing the loan and none of the proceeds or benefits of the loan.

One year later, in May 1982, Michael Browning filed a voluntary Chapter 7 petition with the Bankruptcy Court. Alan Browning subsequently brought an adversary proceeding in that court, asserting that the debt arising out of the consolidation loan was not dischargeable. The Bankruptcy Court agreed, relying on 11 U.S.C. § 523(a)(2)(A). This appeal by debtor Michael Browning followed.

Debtor-appellant asserts that the Bankruptcy Court lacks the authority to hold non-dischargeable a debt owed to an entity not a party to the proceedings, in this case, the First National Bank of Ludlow. This issue was dealt with by the Bankruptcy Court in a footnote in which the Court recognized "the novel legal questions presented by this unusual dischargeability proceeding" but held:

> [A]s a court of equity, the bankruptcy court has both the power and responsibility to remedy the wrongful conduct of those who submit to its jurisdiction.

Nothing short of a finding of nondischargeability would serve equity in this case. *See Hartford Accident & Indemnity Co. v. Flanagan,* 28 F.Supp. 415 419 (S.D.Ohio 1939); *In re Covino,* 12 Bankruptcy Reporter 876 (B.Ct., M.D.Fla., 1981); 11 U.S.C. § 105(a).

Appellant maintains that *In re Covino* is inapposite because the surety in that case had paid in full the obligation of the debtor, unlike the co-signer on the loan in question here. Appellant also relies on *Northern Pipeline Construction Co. v. Marathon Pipeline Co.,* —— U.S. ——, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), in which the Supreme Court found unconstitutional the grant of powers to Bankruptcy Courts by the Bankruptcy Reform Act of 1978 (Bankruptcy Code).

Although it is true that *Marathon Pipeline* cast some doubt upon the scope of the Bankruptcy Court's authority, that doubt is limited to the additional authority created by the Bankruptcy Code, —— U.S. at ——, 102 S.Ct. at 2862–2864, 73 L.Ed.2d at 603–05, and does not fall upon powers traditionally exercised by the Bankruptcy Court under earlier bankruptcy legislation. The question, therefore, is whether the Bankruptcy Court's traditional equitable powers enable it to treat a co-signer of a loan as a creditor for purposes of finding a debt nondischargeable.

Neither the parties nor the Bankruptcy Court addressed the admittedly "novel legal question" in any depth, focusing rather on the Bankruptcy Court's Findings of Facts. Nevertheless, the Bankruptcy Court's decision is premised on the assumption that a co-signer of a loan is a "creditor" for purposes of seeking an exception to dischargeability. The Bankruptcy Code provides that a debt "for obtaining money . . ., by-. . . a false representation," 11 U.S.C. § 523(a)(2)(A), will be discharged, "unless, on request of the *creditor to whom such debt is owed,*" 11 U.S.C. § 523(c), the Bankruptcy Court determines that the debt is not dischargeable. The plain language of the statute thus casts in considerable doubt

the correctness of the Bankruptcy Court's legal premise.

The legal premise upon which a Bankruptcy Court bases its decision—such as the assumption that a co-signer of a loan is a creditor for purposes of dischargeability—are freely reviewable on appeal. *United States v. Mississippi Valley Generator Co.,* 364 U.S. 520, 81 S.Ct. 294, 5 L.Ed.2d 268 (1961); *Matter of Multiponics, Inc.,* 622 F.2d 709, 713 (5th Cir.1980). If we conclude that the legal premises are correct, then we must examine the Court's Findings of Fact to determine whether they are clearly erroneous. Bankruptcy Rule 810; *Multiponics, supra, at 709.*

I. A Co-signer of a Loan Has the Status of a Creditor for Purposes of Challenging the Dischargeability of the Debt Arising out of that Loan

■ Section 523(c) of the Bankruptcy Code provides that debts specified in subsection a(2), which include debts arising out of the debtor's misrepresentations, will be discharged

> unless, on request of the creditor *to whom such debt is owed,* and after notice and a hearing, the court determines such debt to be excepted from discharge.... (emphasis added)

The Notes of the Committee on the Judiciary, S.R. No. 95–989, U.S.Code Cong. & Admin.News 1978, pp. 5787, 5866, state that "[i]f the *creditor* does not act, the debt is discharged." (emphasis added) The Committee Notes point out that subsection (c) does not change prior bankruptcy law and that the rules on bankruptcy procedure will, as in the past, specify who may request determinations of dischargeability.

Bankruptcy Rule 409(a)(1) states that the bankrupt or a creditor may file a complaint with the bankruptcy court to determine the dischargeability of the debt. A "creditor" is an entity with a claim against the debtor that existed at the time the bankruptcy petition was filed. 11 U.S.C. § 101(9)(A). A "claim" is a right to payment whether or not the right is contingent. 11 U.S.C. § 101(4)(A).

A co-signer of a loan is thus clearly a creditor under the Bankruptcy Code for he has a claim against the debtor which remains contingent so long as the debtor has not defaulted on the loan. However, he is not "the creditor to whom the debt [sought to be discharged] is owed," 11 U.S.C. § 523(c) and it would seem therefore that he has no standing to seek an exception to the discharge of that debt.

Construing the Bankruptcy Code in *In re Covino,* 12 B.R. 876 (Bkrtcy.M.D.Fla.1981), the Bankruptcy Court held that a surety that had paid debtor's employer the amounts embezzled from the employer by the debtor had standing to seek an exception from discharge. Appellant insists that the case is distinguishable because the surety, unlike the co-signer in the instant case, had paid off the debt, thereby becoming subrogated to the rights of the creditor. *See also In re Dynda,* 19 B.R. 817, 818 (Bkrtcy., M.D.Fl.1982) (landlord's fire insurer that paid landlord for damages incurred as a result of intentional fire started by tenant-debtor has standing as subrogee to seek an exception to discharge). The court in *In re Covino* relied upon *Hartford Accident & Indemnity Co. v. Flanagan,* 28 F.Supp. 415 (S.D.Ohio 1939), a case decided under the Bankruptcy Act and holding that a surety who had made payment pursuant to an indemnity agreement had standing to seek an exception to discharge where the debt was created by embezzlement. The *Covino* Court adopted the earlier decision's public policy argument that Bankruptcy law should be liberally construed to prevent discharge of "a liability which would not exist but for the fraudulent conduct of the bankrupt." 12 B.R. at 877, quoting 28 F.Supp. at 419.

We find this public policy argument persuasive. We further find the argument applicable to the co-signer of a loan who co-signs purely as an accommodation endorser and receives no consideration for his signature and no benefit or proceeds from the loan whether or not the co-signer has paid the obligation in full.

The creditor to whom the debt is owed has no reason to challenge the dischargeability of a debt arising out of a co-signed loan as he can always seek repayment from the co-signer. To hold that that co-signer does not have standing to challenge the dischargeability of the debt forces the co-signer to pay off the loan in order to challenge the discharge of that debt. Such a result is manifestly unjust where the debt to the creditor and the co-signer's liability arose out of the debtor's misrepresentations. The only person who benefits from such a holding is the fraudulent debtor.

Furthermore, although the general rule is that a voluntary petition for liquidation will result in the discharge of the petitioner's debts, 11 U.S.C. § 727, permitting a co-signer to object to the dischargeability of the debt, in no way limits the general rule. Unless the co-signer actively challenges the dischargeability, the debt will automatically be discharged. 11 U.S.C. § 523(c). Furthermore, the co-signer bears the burden of proving the misrepresentation by clear and convincing evidence. *In re Hagedorn,* 25 B.R. 666 (Bkrtcy.S.D.Ohio, 1982).

Section 509 of the Bankruptcy Code appears at odds with our conclusion that a co-signer of a loan may object to the discharge of the debt. A co-debtor, surety, or guarantor is subrogated to the rights of the creditor only if the co-debtor pays the claim and only to the extent of the payment. 11 U.S.C. § 509(a). Until such creditor's claim is paid in full, the Bankruptcy Court must subordinate the co-debtor's claim to that of the creditor. 11 U.S.C. § 509(c). For purposes of Section 509, a co-debtor clearly does not have equal status with a creditor.

Nevertheless, Section 509 is concerned with the ordering of claims, not with who may object to dischargeability of debt. These are unrelated matters. We conclude that Section 509 has no bearing on who may object to the discharge of a debt.

Finally, we find support for our conclusion that the Bankruptcy Court has the authority to permit a co-signer of a loan to seek an exception to discharge whether or not the co-signer has paid off that loan in the well-established power of the Bankrupt-

cy Court under both the Code and prior law to subordinate one creditor's claims to those of others to prevent consummation of a course of conduct which would be fraudulent or otherwise inequitable as to other creditors. 11 U.S.C. § 501(c); *Heiser v. Woodruff,* 326 U.S. 778, 66 S.Ct. 271, 90 L.Ed. 471 (1946); *Matter of Mobile Steel Co.,* 563 F.2d 692 (5th Cir.1977). Although the power to subordinate claims has to do with the ordering of claims and not the standing of parties, its purpose is to prevent the debtor from benefiting from his own inequitable conduct. By analogy, the Bankruptcy Court has similar power under both the Code and prior law to permit a co-signer to object to discharge of a debt which arose out of the debtor's inequitable conduct where the discharge would result in a benefit resulting from that same conduct. We hold therefore, that a co-signer of a loan who has received no consideration for co-signing and derives no benefit from the loan is a creditor for purposes of Section 523 and has standing to object to the discharge of a debt arising out of that loan.

II. **The Bankruptcy Court's Determination That the Debt was not Dischargeable Is not Clearly Erroneous**

■ Having found that the legal premise upon which the Bankruptcy Court's decision rested is correct, we must determine whether its findings of fact are clearly erroneous. The burden is upon the party seeking to reverse those findings; merely showing that the Bankruptcy Court could have reached another conclusion on the evidence presented is not sufficient. *In re Huntington Ltd.,* 654 F.2d 578–583 (9th Cir.1981). Our review of the record pursuades us that these findings are not clearly erroneous and accordingly we affirm.

■ It is well settled that to prove nondischargeability of a debt under Section 523(a)(2) a creditor must prove by clear and convincing evidence that the debtor knowingly made false representations with the intent of deceiving the creditor, that the creditor reasonably relied on that representation, and that the representation was the

proximate cause of the creditor's loss. *In re Hagedorn,* 25 B.R. 666, (Bkrtcy., S.D. Ohio, 1982); *Miles Employee Federal Credit Union v. Griffin,* 22 B.R., 821 (Bkrtcy, S.D. Ohio 1982); *Livingston v. Hospelhorn,* C–1–82–004, (S.D.Ohio, Sept. 29, 1982). Clear and convincing evidence is evidence which establishes in the mind of the trier of fact "a firm belief or conviction as to the allegation sought to be established." *Hagedorn, supra,* at 668. The Bankruptcy Court made the following Findings of Fact:

3. ... According to Chapman [the Bank's loan officer], defendant [Michael Browning] indicated he wanted a loan in excess of $14,000, but that he also intended to sell his 1980 Datsun to reduce his debt. Chapman was unwilling to approve a loan for $14,000, but based upon defendant's assertion that he intended to sell his car, he approved a loan for $7,701.50. ... Chapman, plaintiff, and defendant all agreed that the sale of the car would enable defendant to meet the payments on a consolidation loan. Plaintiff Alan [Allen Browning] was required to co-sign the loan as a condition of its issuance.

4. After receiving the loan on May 5, 1981, defendant wrote a check ... for $369. This money was to be applied toward the monthly car payment on the Datsun while the car was listed for sale.

5. Plaintiff and his wife advertised the 1980 Datsun in *The Trading Post* for some four weeks ... and received some 40 to 50 inquiries on the car. The desirability of this particular model was borne out by the expert testimony of James Nelson, General Sales Manager for Busum Datsun.

.        .        .        .        .

While plaintiff's advertising efforts met with success, his ability to sell the Datsun was completely frustrated by defendant. Plaintiff and his wife were unable to reach him at home or his place of employment, and were able to show the car to only one prospective buyer.

Because of defendant's lack of cooperation, plaintiff discontinued his efforts to sell the car. However, he was later notified by the Bank of delinquencies on defendant's loan. Plaintiff thereafter contacted James Nelson regarding the sale of the car. Nelson advised him to advertise it with *The Cincinnati Enquirer.*

6. Defendant testified that his attempts at selling the Datsun began as early as August 1980, and have continued ever since. He stated that he had several people helping him sell the car, but was unable to find a buyer who would pay a reasonable price due to the car's poor condition.

However, every other witness in the case (including defendant's own witness, Thomas Patton) indicated that while the car needed minor repairs, it was in good running condition. Patton testified that he helped defendant clean and repair the interior and exterior of the car, and that in his estimation it was worth $5,000 *before* its appearance was improved (emphasis in original). Despite his express willingness to sell the car at a loss, defendant also told Patton that he had rejected offers on the car, although he did not indicate the nature of the offers.

7. On May 28, 1982, defendant filed a Chapter 7 petition. At his discharge hearing on September 29, 1982, the Court approved a reaffirmation agreement for $5,334.26 between The First National Bank of Cincinnati and Michael Browning as to the 1980 Datsun.

■ Based upon his review of the evidence and observation of the demeanor of the witnesses, the Bankruptcy Judge found that Alan Browning had proved each element of non-dischargeability under Section 523(a)(2)(A) by clear and convincing evidence. The Judge stated:

Notwithstanding defendant's assertions to the contrary, it is apparent from the disinterested testimony of Stephen Chapman that defendant [Michael Browning] induced the plaintiff [Alan Browning] to co-sign a loan by representing that he intended to sell his car and thereby reduced his debts to a manageable level. It is equally apparent that the plaintiff relied on this representation to his detri-

ment, and that his reliance upon his son's words was reasonable.

Defendant's intent to deceive is established not only by circumstantial evidence, but by the implausibility of much of defendant's testimony. Initially, the Court finds it difficult to believe that defendant could not have sold his 1980 Datsun by exercising a minimum of diligence.

Defendant's assertion that he did not ask his father to co-sign his consolidation loan is equally troublesome; particularly in light of Stephen Chapman's testimony that the loan would not have issued without plaintiff's co-signature.

Chapman's testimony also effectively refutes defendant's statement that the sale of the Datsun was not a condition of the loan.

Given the dubious credibility of the defendant, the overwhelming testimony which directly contradicts defendant's testimony, and a common-sense view of the circumstantial evidence, this Court has the firm conviction that the defendant did not intend to sell the 1980 Datsun at the time he induced plaintiff to co-sign the loan, and that he thereby made a false representation with intent to deceive the defendant.

Our review of the testimony persuades us that the Bankruptcy Court committed no error, nor do we find any miscarriage of justice. The Bankruptcy Judge has passed on the credibility of the witnesses who testified before him, and we accept his conclusions on such matters. *Slodov v. United States,* 552 F.2d 159, 162 (6th Cir.1977), reversed on other grounds, 436 U.S. 238, 98 S.Ct. 1778, 56 L.Ed.2d 251 (1978).

We conclude, therefore, that the Bankruptcy Court's Findings of Fact are not clearly erroneous. Appellee Alan Browning established, by clear and convincing evidence that appellant Michael Browning made a false representation of his present intention to sell the Datsun at the time the consolidation loan was negotiated. Alan Browning reasonably relied upon the debtor's representation to his detriment. Implicit in the Bankruptcy Court's Findings of

Fact is that Alan Browning co-signed the loan to accommodate his son who could not otherwise obtain the loan.

Accordingly, we affirm the order of the Bankruptcy Court finding that Michael Browning's debt to the First National Bank of Ludlow is not dischargeable in bankruptcy.

SO ORDERED.