In re James William BOLES, Debtor.

Dorothy MILLER, Plaintiff,

v.

James William BOLES, Defendant.

Bankruptcy No. 92–60586.
Adv. No. 92–6053.

United States Bankruptcy Court,
W.D. Missouri.

Jan. 15, 1993.

Order Denying Motion to Reconsider
Feb. 16, 1993.

Kevin P. Curran, Springfield, MO, for plaintiff.

Lawrence E. Ray, St. Robert, MO, for defendant.

## ORDER and MEMORANDUM OPINION

KAREN M. SEE, Bankruptcy Judge.

The question presented is whether the debtor made intentional misstatements of material facts in his bankruptcy schedules and statements of affairs respecting his financial condition that would require a denial of discharge under 11 U.S.C. § 727(a)(4)(A) and whether a debt to his former mother-in-law and Altus Bank is nondischargeable under § 523(a)(2)(B). The Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334(b)(2)(I) and (J), and may enter final orders pursuant to 28 U.S.C. § 157(b)(2).

## I. FACTS

Debtor, a Captain in the U.S. Army, has a Doctorate in Veterinary Medicine and practices in the Army as a veterinarian. Plaintiff Dorothy Miller is debtor's former mother-in-law. During the course of a relationship between debtor and plaintiff's daughter, Karen Cooper–Boles, Karen became pregnant, and she and debtor decided to marry. In late 1989 or early 1990, plaintiff became aware that debtor was having difficulty paying debts incurred prior to his marriage to Karen. After several conversations concerning debtor's pre-marital debts, plaintiff agreed to help ease debtor's financial difficulties due to her concern about the ability of the couple to provide for the child—plaintiff's grandchild—which her daughter was expecting.

Plaintiff agreed to help debtor consolidate his outstanding pre-marital debt. Plaintiff agreed to pledge a piece of real estate as collateral on a consolidation loan obtained by debtor from Altus Bank. Prior to obtaining the loan, debtor provided plaintiff with a copy of the Altus Bank loan application wherein he listed his total liabilities at $13,854.00. The real property pledged by plaintiff had an approximate value of $19,500.00. On May 12, 1990, debtor obtained a loan through Altus Bank in the amount of $16,500.00. Plaintiff did not receive any part of the loan proceeds or other consideration for assisting Debtor in obtaining the consolidation loan.

Within a year of receiving the loan, debtor and plaintiff's daughter divorced. Debtor defaulted on the loan and Altus Bank foreclosed on the plaintiff's real property. Debtor filed a Chapter 7 petition on April 13, 1992. As of the trial date, the property had not yet been sold. Plaintiff became aware from information provided in debtor's bankruptcy petition and schedules that, at the time of the loan application, debtor's true liabilities were $53,800.00 rather than the $13,854.00 previously represented to plaintiff and the Bank.

Plaintiff requests a general denial of discharge under 11 U.S.C. § 727(a)(4)(a) for material misstatements under oath in the bankruptcy schedules and statements of affairs, and also objects to discharge of the Altus Bank debt under 11 U.S.C. § 523(a)(2)(B).

At this point some observations are in order about the witnesses, their demeanor, and their relative credibility at trial. In observing plaintiff at trial, she appears to be a very empathetic, kind, and inexperienced person who simply wanted to ensure the well-being and comfort of her daughter, grandchild and soon-to-be son-in-law. On the other hand, debtor's demeanor suggests he was bound and determined not to pay any debt to or for his former mother-in-law, due to apparent bitterness over the divorce, and his veracity is subject to serious question due to the fact that he changed his story several times, under oath at trial, as to what his income was at the time of filing bankruptcy and in the period before bankruptcy, and as to how he calculated his income and expenses in the bankruptcy schedules, as will be discussed below. Unfortunately, it appears that debtor was not entirely straightforward or truthful at trial, at the § 341 meeting, or in his bankruptcy schedules.

## II. PLAINTIFF'S STANDING AS A CREDITOR

■ A threshold issue is whether plaintiff has standing to object to discharge of a debt which debtor owes to a third party if plaintiff pledges collateral as security for the debt. Plaintiff will be injured if the court discharges the debt owed to Altus Bank. Therefore, plaintiff is a contingent creditor with standing to raise objections to discharge under both § 727 and § 523.

Standing under § 523(a)(2)(B) includes situations where an accommodation party on a loan is subrogated to the creditor's rights or has a right of contribution against the debtor. *In re Bundy*, 95 B.R. 1004 (Bankr.W.D.Mo.1989). A guarantor of a debtor's promissory note is a creditor with standing to object to debtor's discharge under § 727(c)(1). *In re LaBonte*, 13 B.R. 887, 891 (Bankr.D.Kan.1981). In *LaBonte*, the court concluded that "a guarantor or a surety for a claim against the debtor will also be a creditor, because he will hold a

contingent claim against the debtor that will become fixed when he pays the creditor whose claim he has guaranteed or insured." *Id.*

The instant case is factually similar to *In re Browning*, 31 B.R. 995 (S.D.Ohio 1983). The issue in *Browning* was whether a co-signer of a loan has standing to seek an exception to discharge. Debtor's father co-signed a consolidation loan for his son as accommodation party to make it possible for son to pay off his debts, and received no proceeds or benefits from the loan. *Browning* held that the debtor's father, as co-signer, had standing to bring a complaint objecting to discharge of his son's debt arising out of the consolidation loan, even though the father had not paid off the debt. *Id.* at 999. The court concluded that a co-signer has the status of a creditor with a contingent claim for purposes of challenging dischargeability of debts arising from the joint liability. *Id.* at 998.

*Browning* reasoned that the Code should be construed to prevent discharge of "a liability which would not exist but for the fraudulent conduct of the bankrupt" including circumstances where a co-signer of a loan "signs purely as an accommodation endorser and receives no consideration for his signature and no benefit or proceeds from the loan whether or not the co-signer has paid the obligation in full. The creditor to whom the debt is owed has no reason to challenge the dischargeability of a debt arising out of a co-signed loan as he can always seek repayment from the co-signer." *Id.* at 998–999. It would be unjust to require the co-signer to pay off the loan in order to have standing to challenge dischargeability of the debt where the debt to the creditor and the co-signer's liability arose out of debtor's misrepresentations. 31 B.R. 995, 999.

*Browning's* rationale is directly applicable to this case. Plaintiff has a contingent claim against debtor under 11 U.S.C. § 101(4)(A). Plaintiff asserts, and the court finds, that the pledged property will, in all likelihood, be lost through foreclosure. Plaintiff received no benefit from the loan proceeds and her contingent liability as a pledgor on the consolidation loan arises directly from debtor's written misrepresentations. Therefore, plaintiff has standing to raise objections to discharge under both § 727(a)(4)(A) and § 523(a)(2)(B).

### III. DENIAL OF DISCHARGE UNDER § 727(a)(4)(A)

■ The primary issue in this proceeding is whether debtor made a false oath or account on a material matter in connection with his bankruptcy case which would preclude granting him a discharge. The standard of proof required to sustain an objection to discharge under 11 U.S.C. §§ 727 and 523 is a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). Evidence presented in debtor's bankruptcy petition and schedules as well as his own testimony require the conclusion that debtor's discharge must be denied under § 727(a)(4)(A).

■ Debtor's intentional inflation of his indebtedness, and intentional omission of $1,200.32 monthly income on his bankruptcy schedules constitute false oaths or accounts made in an attempt to avoid creditor objections to discharge and to avoid possible dismissal under 11 U.S.C. § 707(b).[1] Moreover, such conduct is sufficient to support a denial of debtor's discharge under 11 U.S.C. § 727(a)(4)(A), which states in relevant part, that:

(a) The court shall grant the debtor a discharge, unless

\*  \*  \*  \*  \*  \*

---

1. The only conceivable motivation for debtor's failure to accurately report income in a Chapter 7 case, as argued by plaintiff, and as tacitly admitted by debtor's counsel (see footnote 2) is to avoid dismissal under § 707(b). If debtor had accurately reported his assets and liabilities on his schedules, the court would have dismissed the case for "substantial abuse" because his disposable income could have funded a Chapter 13 plan which could have paid unsecured creditors in full. *Fonder v. United States*, 974 F.2d 996 (8th Cir.1992). Neither the court nor the U.S. Trustee can now move for dismissal because the time has expired. Bankruptcy Rule 1017(e) requires the motion to made not later than 60 days following the first date set for the § 341 meeting.

(4) The debtor knowingly and fraudulently, in or in connection with the case—

(A) made a false oath or account. . . .

A false oath must be material to bar a discharge under § 727. *Mertz v. Rott*, 955 F.2d 596, 598 (8th Cir.1992) (citing *In re Olson*, 916 F.2d 481, 485 (8th Cir.1990)). *Olson* held that "the subject matter of the false oath is 'material' and thus sufficient to bar discharge, if it bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property." 916 F.2d at 484. False oaths include deliberate misstatements as to assets and liabilities in a bankruptcy petition and the schedules. *In re Radcliffe*, 141 B.R. 1015, 1021 (Bankr.E.D.Ark.1992).

In *Mertz*, the Eighth Circuit held that a failure to disclose a one time tax refund of $1,358.00 was a material omission. 955 F.2d at 599. In the case at bar, the court finds that debtor's intentional failure to disclose monthly income of $1,200.32 constitutes a material omission from debtor's bankruptcy petition. The petition, including the schedules, must be accurate and reliable. *Mertz v. Rott*, 955 F.2d at 598.

Debtor failed to disclose the following sources of income, all of which debtor regularly received and received during the month of April, 1992, the same month he filed his petition in bankruptcy:

| | | | | | |
|---|---|---|---|---|---|
| Gross Income | : | Disclosed–$2,200 | Omitted | $ | 428.60 |
| Housing Allowance | : | Disclosed–$ 0 | Omitted | $ | 537.30 |
| Food Allowance | : | Disclosed–$ 0 | Omitted | $ | 134.42 |
| Veterinarian Pay | : | Disclosed–$ 0 | Omitted | $ | 100.00 |
| **Total** | **:** | **Disclosed–$2,200** | **Omitted** | **$1,200.32** | |

Debtor's actual current gross income, or basic pay, in the month of April, 1992 was at least $2,628.60, as shown by a copy of debtor's Leave and Earnings Statement which was admitted without objection. *See* Plaintiff's Exh. 9. Debtor also received a military allowance for housing of $537.30, and an allowance for food of $134.42 as well as additional supplemental income listed as Vet pay of $100.00 in the month of April, 1992.

Debtor listed food and housing expenses in his schedules, but intentionally failed to list the offsetting food and housing allowances which he received from the military in the same month, thus making his expenses appear higher and his income lower than they actually were. Debtor's testimony confirms that his allowances for housing and food, which total $671.72 in April, 1992, were tax-free income, and therefore worth more because of its tax-free status. Based on the above figures, debtor intentionally failed to disclose 35.3% of his monthly gross income.

Debtor failed to provide specific evidence such as canceled checks that would explain the deficiency. *In re Cook*, 146 B.R. 934, 941 (Bankr.E.D.Pa.1992). Debtor's testimony regarding the calculation of his current gross income is simply not credible. Debtor is a highly educated person and fully understands the meaning of terms in the bankruptcy schedules such as "current gross income," "other income," "assets," and "liabilities."

When questioned about the method he used to arrive at the current income figure of $2,200.00 per month stated in Schedule I, debtor first testified, under oath, that it "was an average" of several months of income. Shortly thereafter, on cross examination, debtor testified that the $2,200.00 figure was his actual income for the month of December, 1991—four months before he filed bankruptcy—but that he did not have any documentation to prove that fact. When questioned further, debtor testified that he received either a 3% or a 6% raise in January, 1992. The uncontroverted evi-

dence clearly shows that debtor's basic pay for the month of January, 1992 was $2,628.61. Plaintiff's Exh. 6. If debtor's basic pay in December, 1991 was $2,200.00, his raise in January, 1992 would have to be about 20% to arrive at the January basic pay of $2,628.61.[2]

Debtor's assertion that the $2,200.00 current gross income figure was December's actual income is a material misstatement of fact. In fact, in addition to the misstatements in the schedules, the debtor's testimony at trial, under oath, as described in the preceding paragraphs, also contained material false statements. The court also rejects the assertion of both debtor and his attorney that the $2,200.00 current gross income figure was debtor's average income. The court further rejects debtor's contention that the $2,200 dollar figure was innocently inserted as an average. The uncontroverted evidence at trial showed that debtor received Basic Allotment for Quarters (BAQ), Basic Allotment for Subsistence (BAS), and Vet pay allowances from the military for many months prior to the bankruptcy. Even without considering debtor's BAQ and BAS supplemental allowances, debtor's **base** pay was higher than $2,200 from January to April of 1992.

Debtor asserted that supplemental allowances were not always paid. However, when military allowances were not paid, there was a corresponding downward adjustment of Debtor's expenses. For exam-

ple, if debtor lived on base in housing provided on base, or while he was overseas on a base, he would not receive the supplemental housing allowance, but his housing expense would be lowered because he would be living on base and not incurring the expense of renting or buying a house. Debtor knowingly and intentionally misstated his income.

Judicial notice is taken that the bankruptcy schedules ask for "current gross income" and not average income or the income debtor received four or five months ago. Even if military allowances for food and housing are considered "entitlements" rather than "wages," debtor was obligated to disclose all sources of "other income" on his schedules.[3] Consequently, in order to avoid a § 707(b) motion to dismiss, because debtor wanted to avoid having to go into a Chapter 13 case (see footnotes 1 and 2), and because debtor was determined to stay in Chapter 7 and discharge the obligation to his former mother-in-law (and Altus Bank), debtor knowingly made substantial misstatements regarding his financial condition which constitute false oaths and accounts for purposes of 11 U.S.C. § 727(a)(4)(A).

Debtor also inflated his liabilities on his schedules. According to his own testimony, debtor intentionally listed his debt to Altus Bank twice without disclosing the duplicate nature of the listings. Debtor

**2.** Debtor's counsel attempted to clarify how debtor arrived at the $2,200.00 figure for "average" income as stated on his petition and his schedules. The following testimony, while enlightening, does not excuse the conduct of debtor or counsel in using figures known by reference to pay stubs to be less than the current basic pay (not to mention omitting the supplemental payments). *U.S. v. Levine,* 970 F.2d 681, 685 (10th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 289, 121 L.Ed.2d 214 (1992).

Debtor's counsel asked his client "Did we not agree that $2,200 would be a fair and accurate average of what you get paid? Isn't that true?" Debtor's response was: "Correct".

Later, counsel reiterated that "you indicated to me that in the recent years you had made a little over $2,000 dollars, and it was my suggestion of the figure of $2,200 to get an average?"

When the court inquired about the figures used to calculate income on debtor's schedules, *counsel explained that: "We used a number in*

*between his prior pay and his later pay ... We deal with military clients all the time.* We have difficulty because of the special pays and special allowances, and we try to do our best to give what the picture will be with certainty ... and we try to come up with a number that makes sense. So that the trustee and others know what can truly be expected because, of course, the *court's looking at and the trustee's looking at whether there can be a 13 done or so forth...."* [emphasis added].

**3.** If the supplemental allowances were not "other income," as debtor argued, then they should have been disclosed as assets. The funds do not exist in a limbo as neither assets nor income. Or at the least, if the funds were omitted from income, then to make a balanced disclosure, debtor should have also omitted the expenses for which the supplemental allowances are provided.

first listed the Altus Bank debt on his creditor list in his Bankruptcy Petition at item 1, naming the creditor as Altus Bank and the claim amount at $15,734.00. Debtor listed the same debt again at item 7, this time naming the creditor as Karen Cooper–Boles, and listing the claim amount at $20,000.00. When questioned on cross-examination about the debt to Karen Cooper–Boles, debtor repeatedly testified that the only debt he owed to Karen Cooper–Boles was "for the property" which plaintiff, Karen's mother, pledged as collateral.

No mention is made in debtor's bankruptcy petition that the Karen Cooper–Boles debt is the same debt as the Altus Bank debt. Consequently, the court concludes that debtor inflated his total unsecured non-priority indebtedness as part of the attempt to paint a more dismal financial picture for a potential § 707(b) analysis.

In his schedules, debtor lists his total liabilities at $98,584.30. According to the schedules, $67,754.30 of debtor's total liabilities were allegedly held by unsecured non-priority creditors. Debtor intentionally listed a $20,000.00 debt to Karen Cooper–Boles, and the court finds that no such liability exists. Consequently, $67,754.30 minus $20,000.00 of non-existent debt equals $47,754.30 in unsecured non-priority debt.

Debtor's current gross income in April, 1992 was $3,400.32 ($40,800 per year) based upon debtor's testimony under oath and debtor's Leave and Earning Statement for April, 1992. Debtor's unsecured non-priority liabilities are actually $47,754.30. Debtor would gross $122,411.52 in three years, or $204,019.20 in five years, at a gross monthly income of $3,400.32. After subtracting reasonable living expenses, debtor could have paid all or at least a substantial portion of his debts under either a three or a five year plan in Chapter 13. Debtor's material misrepresentation of his income and inflation of his liabilities was intentionally made in an effort to defraud the court and his creditors in order to avoid Chapter 13 or a § 707 dismissal, to stay in Chapter 7, and to avoid paying the obligation to

Altus Bank on which his former mother-in-law had pledged her property.

Debtor attended a Section 341 Creditors' Meeting and testified under oath to a Bankruptcy Trustee that he had read his bankruptcy petition and that the statements made therein were a true and accurate reflection of debtor's financial affairs. Debtor made no amendments to his bankruptcy schedules. Since the court concludes that he knew the income and expense figure in the schedules were false at the time he signed the schedules, he also knew the figures were false at the later § 341 meeting when he testified that they were correct. His failure to remedy errors and omissions by amendment of his schedules compounds the concealment. *In re Mathern,* 137 B.R. 311, 327 (Bankr.D.Minn. 1992), *aff'd,* 141 B.R. 667 (D.Minn.1992).

Debtor had ample time to prepare and file his bankruptcy petition in April, 1992, and he also had substantial notice of the trial setting of this cause. Debtor's complete failure to produce any documentation contradicting the allegations made in plaintiff's Amended Complaint, or to produce any documentation supporting the statements made in debtor's bankruptcy petition, preclude any argument that such documents exist and that he did not have time to bring necessary evidence to trial.

The successful functioning of the bankruptcy system hinges upon a debtor's veracity and willingness to make full disclosures. Based on the foregoing findings, the court concludes that debtor knowingly and fraudulently made false oaths and accounts in violation of 11 U.S.C. § 727(a)(4)(A), and that his request for a discharge from his debts should be denied.

## IV. NONDISCHARGEABILITY UNDER § 523(a)(2)(B)

█ The debt arising from the Altus Bank consolidation loan is nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(B), which provides that a debtor is not discharged from a debt

(a)    *  *  *

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

\* \* \* \* \* \*

(B) use of a statement in writing—

(i) that is materially false;

(ii) respecting the debtor's or insider's financial condition;

(iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive. . . .

■ Debtor's use of the loan application constitutes use of a statement in writing, that was materially false, respecting the debtor's financial condition. A material false statement for purposes of § 523(a)(2)(B) is one that is substantially inaccurate. *In re Bundy*, 95 B.R. 1004, 1008 (Bankr.W.D.Mo.1989). During negotiations between plaintiff and debtor, debtor represented to plaintiff that he was approximately $13,854.00 in debt. Before plaintiff pledged her property as collateral, debtor executed and delivered to plaintiff a written loan application which specifically listed $13,854.00 in outstanding debt. In addition to the indebtedness listed on the loan application, plaintiff had knowledge of an additional $2,500.00 in signature debt and approximately $6,000.00 secured indebtedness on debtor's automobile. At the time of making his loan application, debtor's actual indebtedness was approximately $54,000.00 according to evidence in debtor's bankruptcy petition, associated schedules and Debtor's own testimony.

Plaintiff's reliance on the loan application was reasonable. Reliance on financial information provided in a loan application is reasonable, particularly when the debtor is a professional person. *In re Rodriguez*, 29 B.R. 537, 540 (Bankr.E.D.N.Y.1983). Debtor is a Captain in the U.S. Army, having received a doctorate in veterinary medicine after nine years of intensive post-secondary study, and is a highly educated man, having knowledge and experience exceeding that of the average person. Debtor is familiar with the loan application process, having previously obtained loans to finance his education and the purchase of an automobile. Plaintiff, on the other hand, is relatively unsophisticated in financial matters.

■ Plaintiff, debtor's mother-in-law, testified that she had only had two bank loans in her entire life because her husband handled all the family finances. Although the standard for measuring reasonableness of a creditor's reliance on a financial statement is an objective one of a reasonably prudent person, the stringency of the reasonableness standard varies with the lender's sophistication. *In re Bundy*, 95 B.R. 1004, 1009 (Bankr.W.D.Mo.1989). The recipient of a false financial statement has no affirmative duty to conduct an independent investigation into the veracity of that statement. *Id.* at 1010. A creditor's reliance on a financial statement is reasonable if information gathered by third parties fails to alert the creditor to the falsity of the statement. *In re Dishaw*, 78 B.R. 120, 125, 128 (Bankr.E.D.Va.1987). The creditor is not required to assume the debtor is lying or misrepresenting facts in the financial statement.

Plaintiff's testimony regarding the limited extent of her knowledge of debtor's financial condition was more believable than debtor's testimony to the contrary. Debtor's testimony that he told the plaintiff about the student loan debts is inconsistent with the omission of the same information on the loan application form provided to both Altus Bank and plaintiff. Furthermore, plaintiff's reliance upon debtor's written and oral assertions concerning his financial condition was reasonable based upon debtor's position as a captain in the United States Army, his relationship to plaintiff's daughter and the absence of any indication that debtor had misrepresented material facts on his loan application. Debtor failed to inform plaintiff about all of his debts in an effort to persuade plaintiff to pledge her real property as collateral for the consolidation loan debtor was to obtain through Altus Bank.

■ The court finds by a preponderance of the evidence that debtor intention-

ally mislead plaintiff to believe that his total debt was approximately $22,000.00 when, in fact, his total indebtedness was $54,000.00. The court may infer intent to deceive if the debtor makes false representations which the debtor knows or should know will induce a creditor to lend. *In re Dishaw*, 78 B.R. 120, 125 (Bankr.E.D.Va. 1987). Failure to list substantial additional indebtedness on a written loan application is a sufficient factual basis for a finding of intent to deceive a creditor under § 523(a)(2)(B). *In re Lange*, 40 B.R. 554 (S.D.Ohio 1984). Intent to deceive includes reckless disregard for the truthfulness of written statements provided to creditors. *Id.* at 556.

Debtor's failure to list all of his outstanding liabilities on the consolidation loan application constitutes intent to deceive. Debtor intentionally and wrongfully made written and oral representations to plaintiff in an effort to deceive her and to cause plaintiff to pledge her real property in reliance on such misrepresentations.

Debtor intended to deceive the plaintiff by giving her a bank loan application form that substantially understated the extent of his outstanding liabilities on which plaintiff reasonably relied. Plaintiff would not have pledged her property as collateral for debtor's consolidation loan had she known the true extent of his debts. Therefore, the debts owed to Altus Bank and to plaintiff Dorothy Miller are nondischargeable under § 523(a)(2)(B).

It is not often that a debtor is denied a discharge pursuant to § 727, and the court regrets the fact that it must done in this case. It appears that at least in part, the motivation for debtor's actions was the bitterness associated with the marriage and divorce from plaintiff's daughter. Nevertheless, the court concludes that debtor knew what he was doing and understood that the figures he listed in his schedules, and that he testified about at trial, were substantially different than his actual basic pay, supplemental allowances, and expenses.

These written finding and conclusions are substantially the same as those an-nounced on the record at the conclusion of trial, but may include minor changes and corrections.

## V. JUDGMENT

IT IS ORDERED, ADJUDGED AND DECREED that Judgment is entered against debtor James William Boles, and pursuant to 11 U.S.C. § 727(a)(4)(A) the discharge of debtor is denied; and it is further

ORDERED, ADJUDGED AND DECREED that Judgment is entered in favor of plaintiff and against defendant/debtor James William Boles, and pursuant to 11 U.S.C. § 523(a)(2)(B) the discharge of debtor's debts to Altus Bank and to plaintiff Dorothy Miller are hereby denied; and it is further

ORDERED, ADJUDGED AND DECREED that judgment for costs shall be against defendant.

### ORDER DENYING MOTION TO RECONSIDER JUDGMENT

A final order and a judgment were docketed in this adversary action on January 15, 1993. On the eleventh day after the judgment was docketed, on January 26, 1993 at 5:00 p.m., defendant filed with the court in Springfield, a motion to reconsider judgment (which was docketed on January 29, 1993, after the pleading was sent by the court to the Clerk's office in Kansas City for docketing). On or about February 8, 1993, plaintiff filed suggestions in opposition to defendant's motion to reconsider judgment.

The motion to reconsider judgment was filed the eleventh day after the judgment was entered. The order and judgment in this adversary action became final on the tenth day after entry. Thus, the order and judgment became final on January 25, 1993, pursuant to the calculation of time under Bankruptcy Rule 9006. Accordingly, the motion to reconsider, filed on January 26, 1993, is untimely and must be denied for all the reasons set forth in plaintiff's suggestions in opposition.

In addition, it is noted that the motion to reconsider judgment does not reference

any rule, such as FRCP 59(e), and it sets forth no specific grounds for alteration, amendment or other relief. A generic motion to reconsider, without recitation of any rule or of any specific requested relief, preserves nothing and does not toll the time for filing of other post-trial pleadings or a notice of appeal. *See Sanders v. Clemco,* 862 F.2d 161 (8th Cir.1988); *In re The Wine Boutique, Inc.,* 117 B.R. 506, 507 (Bankr.W.D. MO 1990). However, in this case there is no question about tolling of the time because the motion to reconsider was not timely filed in the first instance.

It is also noted that the motion to reconsider was not signed by any attorney of record or local counsel. The motion was faxed by the counsel of record to a Springfield attorney, and that Springfield attorney signed the name of the counsel of record and initialed it.

For these additional reasons, the motion to reconsider should also be denied.

Accordingly, for the foregoing reasons, it is hereby

ORDERED that defendant's motion to reconsider judgment is, for lack of good cause shown, denied.