In re Melvin Gayle SAVICH & Julie Ann Savich, Debtors.

STURGEON STATE BANK, Plaintiff,

v.

Melvin Gayle SAVICH & Julie Ann Savich, Defendants.

Bankruptcy No. 87–00708–C.

Adv. No. 87–0218–C.

United States Bankruptcy Court, W.D. Missouri, C.D.

Feb. 2, 1988.

Elton W. Fay, Columbia, Mo., for plaintiff.

Victor Tell Neff, Jefferson City, Mo., for defendants.

Jack E. Brown, Columbia, Mo., Trustee.

## MEMORANDUM OPINION

FRANK W. KOGER, Bankruptcy Judge.

This adversary action was brought by the Sturgeon State Bank (hereinafter Bank) against debtors Melvin Savich and his wife Julie Savich. There was no evidence linking Julie Savich to any of the alleged improprieties and the Court denied recovery as to her at the conclusion of the evidence. The balance of this opinion will deal only with Melvin Savich and he will be referred to as debtor.

Debtor, who is 45 years old, has a high school education and has been a farmer for his entire adult life. Debtor's father and uncle own substantial acreage and debtor has and does rent ground from them and farm it. Debtor had financed his operation with the Bank for many years. The first page of the Bank's Liability Ledger introduced as an exhibit had the legend;

Savich Farms

Arthur Savich

Gary Green

Sturgeon, Missouri

Who Arthur Savich and Gary Green are or were was not shown. The first entry on the ledger was on October 16, 1964, and disclosed a loan of $5,000.00. From those humble beginnings, the ledger revealed a continuing series of payments, additional advances and interest charges. Perusal of the five sheets constituting that ledger covering twenty-three years of relationship between a farmer and a farm bank was perhaps more instructive to this author than all the testimony from two years of hearing farm cases and listening to the various experts who have graced the witness stand in those cases.

In February of 1967, November of 1974, July and November of 1976, December of 1977, December of 1978, October of 1979 and October of 1981, the ledger shows a zero balance. While the loans had grown larger each year, the balance had only once exceeded $35,000.00 in the seventeen year period from 1964 through 1981.

In 1982 the balance went to $40,000.00. Moreover it never went below $28,000.00

after that time. The high balance was reached on April 29, 1985, at $77,100.00 and the final advance of $15,000.00 was made in March of 1986. Bankruptcy was filed on 18th day of February, 1987. The balance now in question in this § 523 action is $50,000.00. Clearly, it was in 1982 that the previous relationship of symbiosis between farm and bank started its decline into a state of parasitism. This Court, in effect, is now required to determine whether the bank, as the nominal host, was an unwitting and improperly injured participant in the changed relationship.

The Bank complains of two financial statements given by debtor to it on January 26, 1984 and on February 20, 1985. Originally the Bank was proceeding under § 727(a)(4) but amended its complaint to include a § 523(a)(2)(B) complaint and withdrew its § 727 complaint at the time of trial. The Court can find nothing improper about the February 20, 1985, financial statement. Based on the evidence presented there was no misrepresentation in said financial statement. However, there is a distinct difference between the 1985 financial statement and the 1984 financial statement. In the 1984 statement, two entries thereon indicate that debtor owned 120 acres of ground allegedly worth over $100,000.00. This was a portion of the 816 acres farmed by debtor, all of which was actually owned by debtor's father and uncle. In the 1985 financial statement, the entire 816 acres was shown to be owned by debtor's father and uncle.

Prior to the 1984 statement, debtor owed the Bank $40,000.00. The balance by virtue of certain advances increased to $58,500.00 by August 17, 1984, on which date the Bank refinanced the entire loan. It was paid down to $53,000.00 by February 25, 1985, when the Bank once again refinanced the loan. Initially the Bank claimed that its further 1984 advances and refinance of the entire balance in August of 1984 were in reliance on the false 1984 financial statement and that the refinance in 1985 was still tainted by an unexplained but lingering misapprehension arising from the 1984 financial statement that was not eliminated by the 1985 financial statement in which the Court can find no fault.

The Bank to prevail must prove that debtor obtained from it an extension, renewal or refinancing of credit by use of a statement in writing:

1. that is materially false;
2. respecting the debtor's financial condition;
3. on which the creditor ... reasonably relied ...; and
4. that the debtor caused to be made or published with intent to deceive.

Measured by those parameters, how did the Bank's evidence measure up? The Bank clearly proved that it extended or renewed or refinanced a credit; that it had a statement in writing; that the 1984 statement contained a materially false statement respecting the debtor's financial condition. However, the Bank failed to prove reasonable reliance thereon. Perhaps a § 523(a)(2)(B) action can be likened to a slalom ski event wherein the contestant must pass through a certain number of gates in a certain sequence to be still qualified upon reaching the bottom of the hill. If so, the Bank missed the gate labeled § 523(a)(2)(B)(iii) and at that point cannot prevail no matter what else it proves.

What was the evidence on reasonable reliance? The Bank officer testified that they had lent debtor for years without a financial statement. Somewhere along in the early 1980's the Bank had started requiring annual financial statements and same were relied on and became a part of their loan process. However, the facts as to what actually transpired contradict that testimony. Presuming the 1984 financial statement to be materially false, nevertheless the 1985 financial statement was true and no longer showed the debtor as owning the 120 acres yet the Bank still renewed. Even more contradictory is the fact that the Bank asked for but did not receive a 1986 financial statement of any kind and yet once more renewed the loan in June of 1986. It is very difficult for the Court to accept that the Bank reasonably relied on a false financial statement in renewing a loan when it later renewed again on a true

financial statement which reflected material differences and still later renewed without any financial statement. Indeed this differs materially from the testimony of the Bank's officer that the Bank required annual financial statements and relied on same in lending policies.

Perhaps more tersely the Court finds that the Bank was not reasonably relying on a false financial statement when it subsequently took the identical action on a true financial statement and then subsequently took the identical action without any financial statement.

The Complaint of the Bank is DENIED.

This Opinion shall constitute Findings of Fact and Conclusions of Law as required under Rule 7052, Rules of Bankruptcy.

SO ORDERED.