### In re Medardus H. BUNDY & Tawnya R. Bundy, Debtors.

### Bert KUNZLER, Plaintiff,

### v.

### Medardus H. BUNDY & Tawnya R. Bundy, Defendants.

### Bankruptcy No. 88-00223-C. Adv. No. 88-0455-C.

United States Bankruptcy Court, W.D. Missouri, C.D.

Jan. 17, 1989.

Norman W. Lampton, Columbia, Mo., for plaintiff.

Gwendolyn Froeschner, Columbia, Mo., for debtors/defendants.

## MEMORANDUM OF LAW

FRANK W. KOGER, Bankruptcy Judge.

### FACTS

This adversary action was brought by Bert Kunzler, Plaintiff, against debtors Medardus H. Bundy and Tawnya R. Bundy, husband and wife (hereinafter "Debtors") seeking a judgment of nondischargeability of certain debts under 11 U.S.C. § 523(a)(2)(B) and (a)(4). Debtors filed a joint petition for bankruptcy under Chapter 7 of the United States Bankruptcy Code (hereinafter the "Code") on January 19, 1988. Approximately one year prior to their filing for bankruptcy, Debtors entered into a lease-purchase contract for certain residential real estate (hereinafter the "Residential Property") with Plaintiff. Debtors' were to receive title to the property from Plaintiff upon their full performance under the contract.

In connection with this agreement, Plaintiff had Debtors fill out a standardized residential loan application form that Plaintiff had obtained from Boone National Savings and Loan (hereinafter "Bank") and was using for his own information. The

particular focus of this form were Debtors' previous credit references and liability profile. The form provides space for three such references and has a separate section for listing "Liabilities and Pledged Assets." At the bottom of this section, the sum of the applicant's "Total Assets" and "Total Liabilities" is requested. According to the liability schedules accompanying their bankruptcy petition, Debtors had more than three current and/or previous creditors and had a number of outstanding liabilities. On the loan application form, however, Debtors listed only three previous creditors and did not report any liabilities. When asked by Debtors, Plaintiff said three credit references would be sufficient. Plaintiff did not inquire with Debtors as to the existence of any liabilities. Mrs. Bundy did not sign this loan application form and there is no evidence that Plaintiff requested her signature. Debtors later failed to meet their obligations under this agreement and Plaintiff obtained a judgment against Debtors on January 19, 1988 in the Callaway County Circuit Court in the amount of $6,686.00, plus attorney's fees totalling $668.00.

Shortly after consummating the aforementioned agreement and before there were signs of Debtors' failure to perform, Plaintiff was presented an opportunity to purchase certain multi-unit rental property (hereinafter the "Rental Property"). Plaintiff was unable by himself, however, to obtain financing from Bank for the purchase of this property. Bank required a cosigner before it would make the loan. After an unsuccessful effort in obtaining the cosignature of one acquaintance, Plaintiff approached Debtors about cosigning with him on the loan and becoming his partners in this venture. Debtors agreed to cosign the loan and Plaintiff, in turn, provided them with a loan application form to fill out identical to the one used in the parties' Residential Property transaction. Debtors completed and signed this form, which Plaintiff had an opportunity to review, and then delivered to the Bank. As on the previous loan application, Debtors listed only three previous creditors and, with the exception of their liability under

the lease-purchase contract with Plaintiff, reported no liabilities. Plaintiff testified that he asked Debtors about the existence of any other liabilities, but Debtors claimed to have no other liabilities. A credit report issued to Bank in connection with Debtors' loan application similarly failed to report certain debts of Debtors that were then in collection. Bank processed the application and ultimately made the loan to Plaintiff and Debtors. Consideration for this debt was a promissory note dated August 7, 1987 in the principal amount of $110,000.00 (hereinafter the "Note") executed by Debtors as husband and wife and Plaintiff as a single person. The only security held by Bank for this debt was a deed of trust representing a first lien against the Rental property. Bank's lien was perfected by recording the Deed of Trust and Note with the Boone County Recorders Office.

The parties' partnership agreement was entirely oral and its terms were sketchy at best. Debtors contributed $35.00 to the venture, while Plaintiff contributed approximately $40,000.00. Debtors insisted and Plaintiff ultimately agreed that Debtors would initially take full responsibility for managing the property and keeping the books on a trial basis for thirty days. On or about September 15, 1987, Plaintiff concluded that not all rental income was being deposited in the partnership account and that various bills related to the Rental Property's operation were going unpaid. Sometime during the month of December 1987, Plaintiff received notice from Bank that the mortgage payments were not being made and that Bank would accelerate the Note if the default was not cured. These circumstances caused Plaintiff to expend personal funds and labor to repair and maintain the Rental Property and to seek alternatives with Bank to avoid foreclosure.

In response to Debtors' bankruptcy, Bank filed a timely Proof of Claim on January 29, 1988. Bank's claim stated that at the time of filing, Debtors and Plaintiff were indebted to Bank in the amounts of $109,923.90 for principal, $2,969.60 for accrued interest, and $124.62 for late

charges, with interest accruing on the principal balance from and after January 19, 1988 at a rate of 10.5% per annum. Following the Order of this Court on February 26, 1988 granting Bank relief from the automatic stay, Bank foreclosed on its lien against the Rental Property leaving it with a deficiency of approximately $30,000.00. The Bank never asserted any dischargeability claim against debtors based on the loan application.

By or about November 15, 1987, several attempts by Plaintiff to collect past due installments from Debtors under the parties' lease-purchase contract had failed and Debtors had vacated the Residential Property. Plaintiff subsequently entered the property and removed its contents, portions of which were moved and stored on or near the Rental Property, while the rest was hauled to a local dump.

Plaintiff filed a proof of claim on March 15, 1988 for an unsecured claim totalling $51,322.01. The claim was for funds Plaintiff claimed were fraudulently misappropriated. Debtors filed an objection to Plaintiff's claim stating that they did not owe Plaintiff any of the claimed amount. This Court issued an Order on July 29, 1988 discharging Debtors from all debts not otherwise determined nondischargeable under clauses (2), (4), and (6) of 11 U.S.C. § 523(a).

Plaintiff filed a three count Complaint on May 18, 1988 in which he seeks a determination that both the judgment debt involving the Residential Property and the debt underlying the Note co-signed by Plaintiff and Debtors are nondischargeable. Specifically, Count I of the Complaint claims that Debtors intentionally and falsely represented their financial condition on the first Residential Property loan application and as a result, this debt is nondischargeable under 11 U.S.C. § 523(a)(2)(B). Count II claims that Debtors similarly misrepresented their financial condition on the second Rental Property loan application and that Plaintiff relied on this statement prior to co-signing the Note with Debtors. Consequently, Plaintiff asserts that this debt is nondischargeable under 11 U.S.C. § 523(a)(2)(B).

In Count III Plaintiff seeks an alternative exception to discharge of the debt underlying the Note, alleging that the parties entered into a partnership upon purchase of the Rental Property, and that certain conduct of Debtors breached their purported fiduciary duty to Plaintiff. Plaintiff asserts that this breach of Debtors' alleged fiduciary duty to Plaintiff merits a finding of nondischargeability of the debt under 11 U.S.C. § 523(a)(4).

Debtors, in their Answer to Plaintiff's Complaint, deny each and every substantive claim made by Plaintiff regarding the nondischargeability of the two debts at issue and request relief under 11 U.S.C. 523(d) for their costs and reasonable attorney's fees. In addition to their Answer, Debtors filed a two count Counterclaim against Plaintiff. In Count I Debtors claim that upon repossessing the Residential Property, Plaintiff converted for his own use personal property belonging to Debtors valued at $150.00. Count II alleges that during the parties' partnership, Plaintiff converted partnership property for his own use and thereby breached his purported fiduciary duty to Debtors.

## QUESTIONS PRESENTED

1. Whether the judgment debt underlying the parties' lease-purchase agreement meets the requirements of a nondischargeable debt under 11 U.S.C. § 523(a)(2)(B).

2. Whether a Bankruptcy's Court's traditional equitable powers enable it to treat a comaker of a loan as a "creditor" who has standing to challenge the dischargeability of a debt under 11 U.S.C. § 523(a)(2)(B).

3. Whether a general fiduciary relationship exists between business partners within the meaning of the 11 U.S.C. § 523(a)(4), which makes a debt nondischargeable for fraud or defalcation while acting in a fiduciary capacity.

## DISCUSSION

I. *Dischargeability Under 11 U.S.C. § 523(a)(2)(B)*

The first two of Plaintiff's three Counts invoke § 523(a)(2)(B) which excepts from

discharge any debt for money or property to the extent it was obtained by the use of a written statement:

    (i) that is materially false;

    (ii) respecting the debtor's financial condition;

    (iii) on which the creditor to whom the debtor is liable for such money or property reasonably relied; and

    (iv) that the debtor made with intent to deceive.

11 U.S.C. § 523(a)(2)(B).

A creditor must prove all of the above elements to prevail. *In re Jones*, 88 B.R. 899, 903 (Bkrtcy.E.D.Wis.1988). The standard of proof regarding § 523 litigation in this District is a "preponderance of the evidence". *In re Garner*, 73 B.R. 26, 29 (Bkrtcy.W.D.Mo.1987). In light of the Code's strong "fresh start" policy, discharge provisions under the Code are construed strictly against the objecting creditor and liberally in favor of the debtor. *In re Stelweck*, 86 B.R. 833, 845 (Bkrtcy.E.D. Pa.1988). Another important, and often competing, policy of the Code related to the discharge provisions is that debts incurred through a debtor's fraudulent conduct do not deserve the Code's protection and are nondischargeable. *Matter of Bogstad*, 779 F.2d 370, 373 n. 4 (7th Cir.1985). In reconciling the inherent tension between these two policies, the debtor's fresh start merits greater protection than the rights of creditors who act unreasonably. *In re Newmark*, 20 B.R. 842, 861 (Bkrtcy.E.D.N.Y. 1982); see also *In re Brewood*, 15 B.R. 211, 215 (Bkrtcy.D.Kan.1981). The "fresh start" policy mandates, however, that exceptions to discharge "be confined to those plainly expressed" in the Code. *Gleason v. Thaw*, 236 U.S. 558, 562, 35 S.Ct. 287, 289, 59 L.Ed. 717 (1915).

In a previous application of § 523(a)(2)(B), the Court likened the provision to a slalom ski event in which the "contestant is required to pass through a certain number of gates in a certain sequence" to remain qualified upon reaching the finish. *In re Savich*, 82 B.R. 1011, 1012 (Bkrtcy.W.D.Mo.1988). Should Plaintiff miss but one gate, he cannot prevail no matter what else he proves. *Id.* Plaintiff is clearly owed a debt represented by judgment, and the loan application is a statement in writing respecting Debtors' financial condition. § 523(a)(2)(B)(ii). Less apparent, on the other hand, is whether the loan application's failure to list any of Debtor's then outstanding liabilities was "materially false" within the meaning of § 523(a)(2)(B)(i). A materially false statement for purposes of this statutory exception to discharge is one that is substantially inaccurate. *In re Anzman*, 73 B.R. 156, 163 (Bkrtcy.D.Colo.1986); see also *Matter of Bogstad*, 779 F.2d at 375 (material falsity defined as important or substantial untruth, revelation of which would have precluded extension of money). A finding of "material falsity" in a financial statement can be based on omission of information about a debtor's financial condition. *In re Kroh*, 87 B.R. 1004, 1008 (Bkrtcy.W.D.Mo. 1988).

Although Debtors' loan application was submitted one year before their bankruptcy filing, Debt Schedule A–3 filed with their bankruptcy petition indicates that Debtors failed to list outstanding liabilities in excess of $6,000.00. Relative to Debtors' estimable net worth at the time the loan application was completed, the Court finds that this omission was a substantial inaccuracy sufficient to constitute a material falsity within the meaning of § 523(a)(2)(B)(ii). The Court's finding of material falsity in this case may well represent the lower end of evidence sufficient to support a finding of this element under § 523(a)(2)(B). Although Debtors' omission was substantial in terms of the amount involved, it is a closer question as to whether the loan application provided by Plaintiff was ever intended or purported to be a list of all of Debtors' previous credit references and outstanding obligations. There is nothing in the record to suggest Debtors conveyed or intended to convey the impression that all of their previous creditor references and obligations were listed. Further, with one exception, the form's printed directions permit individuals of Debtors' inexperience in such matters to reasonably

infer that the form does not call for a listing of all debts but only of those classes of debt indicated. See *Dial Finance Co. v. Duthu,* 188 So.2d 151 (La.1966) (omission of creditors from loan application not materially false for purposes of exception to discharge, absent language on application indicating creditor's intent to require list of all or principal obligations, and absent statements by debtor purporting to have listed all debts). The one feature of the application form which should have suggested to Debtors that a complete listing of their obligations was required is where the form, in bold capitalized letters calls for the sum of Debtors' "Total Liabilities." For this reason, and given the amount omitted, the Court finds that Debtors' omission was materially false.

Thus, the two remaining "gates" through which Plaintiff must pass involve the issues of whether Plaintiff's reliance on the loan application was reasonable and whether Debtors made such statement with intent to deceive. § 523(a)(2)(B)(iii), (iv). Because creditors might induce or encourage debtors to falsify financial statements in order to make a debt nondischargeable, Congress explicitly required that nondischargeability under § 523(a)(2)(B) be premised upon a showing of reasonable reliance. *In re Ophaug,* 827 F.2d 340, 343 (8th Cir. 1987). There are two components to the reliance requirement of § 523(a)(2)(B)(iii). "[T]he creditor must not only have relied on a false statement in writing, but the reliance must have been reasonable." H.R. Rep. No. 95–595, 95th Cong., 1st Sess. 364 (1977); S.Rep. No. 95–989, 95th Cong., 2d Sess. 78 (1978), U.S.Code Cong. & Admin. News 1978, pp. 5787, 5864, 6320. Plaintiff does not allege in Count I of his Complaint that he actually and reasonably relied on the loan application completed and signed by Mr. Bundy. The Court will presume for the moment, however, that Plaintiff relied in fact upon this statement. The focus then is on the reasonableness of Plaintiff's reliance, which many courts consider to be circumstantial evidence of actual reliance; or alternatively stated, dischargeability shall not be denied where a creditor's claimed 'reliance' on a 'financial statement'

would be *so* unreasonable as not to be actual reliance at all." *In re Garman,* 643 F.2d 1252, 1256 (7th Cir.1980), *cert. denied,* 450 U.S. 910, 101 S.Ct. 1347, 67 L.Ed.2d 333 (1981). With this legal premise in mind, the Court notes that Plaintiff's failure to allege reliance at all casts early doubt upon the reasonableness of his presumed reliance.

The Court's determination of reasonableness is properly made by considering all the facts and circumstances of the case. *In re Martin,* 761 F.2d 1163, 1166 (6th Cir.1985). Although the standard for measuring reasonableness of creditor's reliance on financial statement is an objective one of a reasonably prudent person, *In re Picou,* 81 B.R. 152, 155 (Bkrtcy.S.D.Fla.1988), the stringency of the reasonableness standard varies with the lender's sophistication. *In re Newmark,* 20 B.R. 842, 861 (Bkrtcy. E.D.N.Y.1982). In addition, the existence and nature of any prior relationship or dealings between the parties are also relevant to determine the credibility of the creditor's reliance. For example, "evidence of friendship or a close personal relationship weighs heavily in favor of finding reasonable reliance." *In re Phillips,* 804 F.2d 930, 933 (6th Cir.1985); see also *In re Kreps,* 700 F.2d 372, 376 (7th Cir.1983) (bank's reliance on long-time customer's informal list of assets and oral promise was reasonable). Reasonable reliance on financial statement can also be shown, for purpose of this statutory exception to discharge, by evidence that lender would not have extended credit had accurate information been provided or that statement was contributory cause of extension of credit. *In re Kroh,* 87 B.R. at 1008.

■ The Court finds that Plaintiff's presumed reliance on Debtors' loan application under all the facts and circumstances of this case was unreasonable to the point where it is doubtful there was actual reliance at all. Debtors failed, for whatever reason, to list *any* liabilities on the application. In this condition, the form was incomplete and provided information that on its face was insufficient to support a finding of reasonable reliance. See *In re Rich-*

*ards,* 71 B.R. at 1022 (despite claim of reliance, none exists where creditor receives information insufficient on its face to provide basis for reliance). Between the two parties, Plaintiff was more experienced in such matters. The parties were not close personal friends nor did they have a long-standing relationship. Nevertheless, Plaintiff assured Mr. Bundy that three credit references were sufficient, failed to ask Mr. Bundy at the time the application was submitted whether the couple had any liabilities since none were reported on the form, and accepted the form without insisting upon Mrs. Bundy's signature.

This District does not impose an affirmative duty on the recipient of a false financial statement to conduct an independent investigation into the veracity of that statement as a prerequisite to a nondischargeability cause of action. *In re Earls,* 80 B.R. 978, 980 (W.D.Mo.1987). This does not mean, however, a recipient of a facially inadequate statement, such as Plaintiff, can completely ignore such deficiencies and expect later to successfully object to the discharge of the credit extended. *In re Weiner,* 86 B.R. 912, 915–16 (Bkrtcy.N.D. Ohio 1988) (facially erroneous statement or one containing obvious inadequate information cannot sustain determination of reasonableness). The reasonableness requirement under § 523(a)(2)(B) does not permit a creditor to "assume the position of an ostrich with its head in the sand and ignore facts which were readily available to it." *In re Blatz,* 37 B.R. 401, 404–05 (Bkrtcy.E. D.Wis.1984) (quoting *In re Yeiser,* 2 B.R. 98, 101 (Bkrtcy.M.D.Tenn.1979). Upon noticing that no liabilities were listed on the form, Plaintiff could have easily inquired with Debtors whether, in fact, any existed. See e.g., *In re Bush,* 696 F.2d 640, 643–44 (8th Cir.1983) (bank's reliance not reasonable where it failed to ask about debtor's other debts). To expect such a modest inquiry under the circumstances, does not

require Plaintiff to conduct an independent investigation among third parties to establish reasonable reliance. "[Reasonableness] is a question of credibility", *In re Richards,* 71 B.R. at 1022. Any faith Plaintiff might have put in Debtors' loan application is not credible. Moreover, Plaintiff has not alleged nor shown that had Debtors' financial statement been accurate, he would not have entered into the agreement. Congress did not intend reliance to be successfully asserted in bad faith with the benefit of hindsight to avoid discharge. *In re Earls,* 80 B.R. at 979–80.

Because the Court finds that Plaintiff did not reasonably rely upon Debtors' financial statement as required under § 523(a)(2)(B)(iii), the debt is not excepted from discharge and the Court need not consider whether Debtors had any intent to deceive.

## II. *Standing Under § 523(a)(2)(B)*

One of the prerequisites to obtaining an exception to the discharge of a debt under § 523(a)(2)(B) is that the party bringing the action have standing to seek the exception. Section 523(a)(2)(B)(iii) sets forth this threshold requirement, restricting the right to challenge a discharge to "a *creditor to whom the debtor is liable* " for such money or property.[1] Under what would otherwise appear from the language of § 523(a)(2)(B) to be a clear description as to who has standing under this section, the Court must resolve the question, novel to this District, of whether a Bankruptcy's Court's traditional equitable powers enable it to treat a comaker of a loan as a "creditor" for purposes of finding the debt nondischargeable under § 523(a)(2)(B).

To the Court's knowledge, there are only two reported cases that discuss this precise issue, albeit under other § 523(a) exceptions, on which Plaintiff might attempt to

---

**1.** Section 523(c) similarly provides that debts for money, property, or an extension of credit are discharged "... unless, on request of the *creditor to whom such debt is owed,* ... the court determines such debt to be excepted from discharge under [§ 523(a)(2), (4), or (6) ] as the case may be ..." (emphasis added). The legislative history of this section accordingly notes that "[i]f the creditor does not act, the debt is discharged". H.R.Rep. No. 95–595, 95th Cong., 1st Sess. (1977); S.Rep. No. 95, 989, 95th Cong., 2d Sess. (1978), U.S.Code Cong. & Admin.News 1978, p. 5787.

hang his hat. In the most recent of these two cases, the court in *In re Brown*, 37 B.R. 295 (Bkrtcy.W.D.Ky.1983) was asked by the debtor's former wife to determine the dischargeability under 11 U.S.C. § 523(a)(5) of certain charge account obligations cosigned by her and assumed by the debtor under the dissolution decree. The court held that the former wife, as cosignor of the credit obligations for which debtor had agreed to hold her harmless, was a "creditor" within the meaning of § 523(a)(5) with right to challenge the discharge of debtor's assumed credit obligations. *Id.* at 298. In support of its conclusion, the court cited Bankruptcy Rule 4007(a), which provides that a debtor or creditor may file a complaint with the court to determine the dischargeability of a debt. *Id.* at 297. For the meaning of "creditor", the court referred to § 101(9)(A) which defines that term as "an entity that has a claim against the debtor ..." A "claim" is defined under § 101(4)(A) to mean "a right to payment, whether or not such right is ... contingent". As cosigner of the credit obligations, the court explained, the former wife had a contingent claim against the debtor while the credit obligations remained unpaid. *Id.* at 298. The court reasoned that to deny a cosignor of incurred debts standing to challenge their dischargeability, in spite of the hold harmless agreement to which the debtor was bound, would force the cosignor to pay off the debts to earn the right to object to discharge. *Id.* Such a result would be "manifestly unjust" in the court's opinion. *Id.*

Unlike the objection to discharge in the instant case, *Brown* involved an exception to discharge action under § 523(a)(5), which makes nondischargeable debts for "alimony to, maintenance for, or support of [a] *spouse, former spouse, or child of the debtor.*" Section § 523(a)(5) says nothing about excepting debts at the request of a "creditor to whom the debt is owed". The provision applies only in connection with separation or property settlement agreements, divorce decrees, or other court or-

ders. 3 *Collier on Bankruptcy* § 523.15[2] (15th ed. 1988). Although the *Brown* court finds authority for its conclusion in the general language of Bankruptcy Rule 4007(a) and the Code's broad definitions of "creditor" and "claim", the court's analysis is not instructive as to how that conclusion is supported by section 523(a)(5)'s more specific language which, unlike § 523(a)(2)(B), makes no direct reference to the terms "claim" or "creditor". Further, § 523(a)(5) is designed to champion a policy of the Code that seeks to prevent support obligations to a debtor's children and former spouse from being discharged by filing for bankruptcy. H.R. Rep. No. 97–208, 97th Cong., 1st Sess. 986 (1981); S.Rep. No. 97–139, 97th Cong., 1st Sess. 523 (1981). Section 523(a)(2)(B), U.S. Code Cong. & Admin.News 1981, pp. 396, 789, 1348, on the other hand, is aimed at preventing the discharge of debts created through the use of false financial statements. Finally, the *Brown* court cites no prior judicial authority for its conclusion. For these reasons, little can be drawn from *Brown* to help with the analysis under § 523(a)(2)(B) of the issue before the Court. The Court accordingly rejects the general proposition reached in *Brown* that a cosigner on a note is a creditor with right to object to the dischargeability of a debt.

In the second of the two cases referred to, the court in *In re Browning*, 31 B.R. 995 (S.D.Ohio 1983) examined the issue of whether a cosigner of a loan has standing to seek an exception to discharge, where that person cosigns purely as an accommodation endorser and receives no consideration for his signature and no benefit or proceeds from the loan. In *Browning*, a father had cosigned a loan with his son solely to accommodate his son and received no consideration for cosigning nor any of the proceeds or benefits of the loan. The son later filed for bankruptcy under Chapter 7 of the Code and the father objected to discharge of the debt under 11 U.S.C. § 523(a)(2)(A) [2] alleging that the debt had

---

**2.** Section 523(a)(2)(A) provides in pertinent part that discharge will not be allowed if a debt for money, property, or services was obtained by:

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's ... financial condition.

been obtained by false representation. *Id.* at 997.

Applying the same provisions and analysis used by *Brown* court, the *Browning* court held that, whether or not the father had paid the obligation in full, as cosigner, the father was a "creditor" and had standing to object to the discharge. *Id.* at 998. The court conceded that the father could not be a "creditor to whom the debt is owed" within the meaning of § 523(c) which provides for the discharge of a debt "unless, on request of the creditor to whom such debt is owed," the court allows an exception from discharge under § 523(a)(2), (4), or (6). The court thus reached its holding, not under the language of the Code, but on grounds of public policy and through the court's proclaimed equitable powers. The court found persuasive the public policy argument that the Code should be liberally construed to prevent discharge of debts which would not exist but for the debtor's fraudulent conduct. *Id.* Like the court in *Brown*, the *Browning* court considered it "manifestly unjust" to force a cosigner to pay off the loan in order to have standing to challenge the dischargeability of the debt, particularly since the cosigner's liability arose out of the debtors misrepresentations. *Id.* at 999. The court concluded that "[t]he only person who benefits from such a holding is the fraudulent debtor." *Id.*

■ A well established rule of statutory construction is that where a statute's language is unambiguous, that language must be regarded as conclusive absent a clearly expressed legislative intent to the contrary. *United States v. Turkette,* 452 U.S. 576, 580, 101 S.Ct. 2524, 2527, 69 L.Ed.2d 246 (1981). The language of § 523(a)(2)(B) is sufficiently clear to conclude that standing under this section does not extend to co-

makers of notes, unless a comaker is entitled to subrogation of the creditor's rights or can establish a right of contribution against his fellow comaker. It is the belief of this Court that a co-maker who has initiated the loan and has not signed as an accommodating party occupies a less favorable position than the co-maker in the *Browning* case. Any liability Debtors could have to Plaintiff on the debt in issue is contingent upon Plaintiff paying the loan off with Bank. That contingency has not been fulfilled and, as a result, Plaintiff is not a "creditor to whom the debt is owed" and does not possess the requisite standing to object to the debt's discharge under § 523(a)(2)(B).[3] See *In re Dishaw,* 78 B.R. 120, 125 (Bkrtcy.E.D.Va.1987) (guarantor of debt had standing under § 523(a)(2)(B) upon maker's default on promissory note). This is consistent with the Code's fresh start policy and with the properly confined scope of the Court's equitable powers under the Code. See *Norwest Bank Worthington v. Ahlers,* 485 U.S. 197, ――――, 108 S.Ct. 963, 968–69, 99 L.Ed.2d 169 (1988) (whatever equitable powers remain in bankruptcy courts must and can only be exercised within confines of the Bankruptcy Code).

III. *"Fiduciary Capacity" Under § 523(a)(4)*

■ The threshold requirement for holding a debt nondischargeable for fraud or defalcation while acting in a fiduciary capacity is finding that debtor was in fact a fiduciary of the creditor. *In re Koelfgen,* 87 B.R. 993, 996 (Bkrtcy.D.Minn.1988). The concept of "fiduciary" as used in § 523(a)(4)[4] "applies only to express or technical trusts and does not extend to implied trusts, which are imposed on transactions by operation of law as a matter of

---

**3.** Related to the requirement of standing in a § 523(a)(2)(B) action is that the creditor must show that it sustained a loss that was the proximate result of the debtor's financial statement. *In re Jones,* 88 B.R. 899, 903 (Bkrtcy.E.D.Wis. 1988). There is no evidence in the record that shows Plaintiff sustained a loss proximately caused by Debtors' loan application. In the instant case, plaintiff solicited defendant's cosigning of the note to Bank and it would be

extremely difficult to visualize "reasonable reliance" on the part of plaintiff on such loan application.

**4.** Section 523(a)(4) provides in pertinent part that a debtor shall not be discharged from a debt for "fraud or defalcation while acting in a fiduciary capacity ..."

equity." *In re Kaufman*, 85 B.R. 706, 710 (Bkrtcy.S.D.N.Y.1988); see *In re Johnson*, 691 F.2d 249, 251 (6th Cir.1982) (discussing parallel section of Bankruptcy Act). In an effort to promote the Code's "fresh start" policy, the United States Supreme Court has long given this dischargeability provision a narrow construction and has made it clear that the term "fiduciary" is to have limited meaning. See e.g., *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 333–34, 55 S.Ct. 151, 153–54, 79 L.Ed. 393 (1934). Accordingly, the lower courts, this Court included, have been strict in their construction of this provision. See e.g., *In re Braudis*, 86 B.R. 1001, 1003–04 (Bkrtcy.W.D.Mo.1988); *In re Napoli*, 82 B.R. 378, 381–82 (Bkrtcy.E.D.Pa.1988); *In re Hurbace*, 61 B.R. 563, 565–66 (Bkrtcy.W.D.Tex.1986).

Although the definition of fiduciary is a question of federal law, state law is relevant in determining whether a trust or fiduciary relationship exists. *Driggs v. Black*, 787 F.2d 503, 506 (10th Cir.1986). Under the Uniform Partnership Law adopted in Missouri, the applicable provision addressing a fiduciary relationship in a partnership states that:

> Every partner must account to the partnership for any benefit, and hold as trustee for it any profits derived by him without the consent of the other partners from any transaction connected with the formation, conduct, or liquidation of the partnership or from any use by him of its property.

§ 358.210(1) (V.A.M.S.1968)

The Uniform Partnership Law adopted in Missouri has previously been held not to create the type of technical or express trust required to establish the fiduciary relationship required for a determination of nondischargeability under § 523(a)(4). *In re Holman*, 42 B.R. 848, 850–51 (Bkrtcy.E.D.Mo.1984). Bankruptcy courts in other Uniform Partnership jurisdictions have reached the same conclusion. See, e.g., *In re Napoli*, 82 B.R. 378, 382 (Bkrtcy.E.D.Pa.1988) (New Jersey's Uniform Partnership Law). In particular, the language of § 358.210(1) (V.A.M.S.) has been read to do no more than enunciate the fiduciary character of the partnership relationship which, if breached, might provide the basis for a constructive trust, but not for the type of trust contemplated in the nondischargeability exception. *In re Clemens*, 83 B.R. 945, 951 (Bkrtcy.N.D.Ohio 1988). The Eighth Circuit Court of Appeals had held that § 523(a)(4) does not reach constructive trusts. See *In re Long*, 774 F.2d 875 (8th Cir.1985). In the absence of an express trust under which a fiduciary relationship between the parties can be found, § 523(a)(4) simply does not operate. *In re Dloogoff*, 600 F.2d 166, 170 (8th Cir.1979) (discussing identical language of § 17(a)(4), predecessor of § 523(a)(4)). As this Court has previously stated, "the term 'fiduciary' as used in 11 U.S.C. § 523(a)(4) ..., absent special considerations, does not extend to the more general class of fiduciaries such as ... partners." *In re Braudis*, 86 B.R. at 1004. Thus, reference to Missouri's Partnership Law does not support Plaintiff's claim under § 523(a)(4).

Further, there are no special circumstances to support allegation that Debtors were acting in a "fiduciary capacity" within the meaning of § 523(a)(4). This Court has recognized that if a fiduciary duty were found inherent in all partnership or contract relationships, few, if any, debts would be discharged under the exceptions. *In re Braudis*, 86 B.R. at 1003–04. Plaintiff states in its Complaint that the parties entered into a partnership upon the purchase of the property and that Debtors breached their purported fiduciary duty to Plaintiff. Beyond these base allegations, however, Plaintiff has not alleged how the parties' relationship as cosigners on the Note and purchase of the property served as the basis for a fiduciary relationship within the purview of § 523(a)(4). Plaintiff's claim is, therefore, insufficient as a matter of law for purposes of asserting a nondischargeability claim under § 523(a)(4).

### IV. *Debtors' Answer and Counterclaims*

▮ Debtors, in their Answer to Plaintiff's Complaint, have requested attorney's fees under 11 U.S.C. § 523(d) for defending this action. Although the Court finds that

**1014**

Plaintiff does not have a sound case, the Court believes that Plaintiff acted in good faith and has not been guilty of abusive practices in this case. Accordingly, the Court must deny Debtors' request for attorney's fees.

Debtors have filed a two Count Counterclaim against Plaintiff. The first is a claim of conversion of personal property. There is insufficient evidence in the record to support this claim. In their second Counterclaim, Debtors allege that Plaintiff converted partnership property and thereby breached his fiduciary duty to Debtors. Although the Court finds a general fiduciary duty existed between the parties by virtue of their partnership, there is no evidence that Plaintiff converted or misappropriated partnership assets in violation of this duty.

### CONCLUSION

Based on the foregoing discussion, the Court DENIES Plaintiff's request in Counts I and II of Plaintiff's Complaint for the nondischargeability of debts under 11 U.S.C. § 523(a)(2)(B) and similar request under 11 U.S.C. § 523(a)(4), and his Petition is DISMISSED. Further, Debtors request for attorney's fees pursuant to 11 U.S.C. § 523(d) is DENIED and Debtors Counts I and II of Debtors Counterclaim are also DENIED.

This Opinion constitutes Findings of Fact and Conclusions of Law as required by Rule 7052, Rules of Bankruptcy.

SO ORDERED.