George E. Tillinghast, Sherwood, Tillinghast & Scalise, Glastonbury, Conn., for plaintiff.

· Bruce E. Beck, Beck & Eldergill, Manchester, Conn., for defendant.

**In the Matter of Thomas G. KAYSER, Jacquelyn M. Kayser, Debtors.**

**PEOPLE'S BANK, Plaintiff,**

v.

**Thomas G. KAYSER, Defendant.**

**Bankruptcy No. 2–90–00650.**
**Adv. No. 2–90–2129.**

United States Bankruptcy Court,
D. Connecticut.

Nov. 27, 1990.

## MEMORANDUM OF DECISION

ROBERT L. KRECHEVSKY, Chief Judge.

### I.

### ISSUE

In this adversary proceeding the plaintiff, People's Bank, contends a debt due it from Thomas G. Kayser, the debtor, is nondischargeable because the debt was incurred by means of a materially false written financial statement submitted by the debtor to the plaintiff. See Code

§ 523(a)(2)(B).[1] The debtor concedes that the financial statement was, in part, false, but denies that the statement taken as a whole was materially false, that the creditor reasonably relied upon the false portion, and that the debtor made the falsehood with intent to deceive. The following facts are based upon a hearing held on October 17, 1990.

## II.

### FACTS

The debtor, on or about August 18, 1989, applied to the plaintiff for a $50,000.00 business line of credit for Career Consultants, Inc. (Career), a company owned by the debtor in the business of personnel recruitment. At that point Career had been operating for some six months. The debtor also then owned and operated another personnel recruiting company, Medtech, Inc. (Medtech), and had a 50% stock interest in a corporation named Penny Corner Pub, Inc. (Penny Corner) which operated a nightclub known as "Ashley's." The debtor had not previously borrowed money from the plaintiff.

In the "Personal Financial Statement/Application" (the statement) supplied by the plaintiff and completed by the debtor in connection with the requested loan to Career, the debtor listed personal assets totaling $1,117,500.00, liabilities of $575,000.00, and an annual income of $109,200.00. In the liabilities schedule of the statement, the debtor placed the figure of $190,000.00 opposite a line designated "Notes due Others." On another line designated "Real Estate Mortgages Payable," he inserted the figure of $370,000.00. Some days later, Debra Harris, the plaintiff's branch manager who had received the statement from the debtor, called the debtor for more information about the $190,-000.00 liability. He advised her it represented a Medtech obligation of $90,000.00 and a Penny Corner obligation of $100,-000.00, both guaranteed by the debtor. Harris placed that additional information on the statement. What the debtor failed to disclose to Harris or indicate on the statement was that both guaranteed obligations, accomplished by his signing as a comaker of the corporate notes, were secured by mortgages on his home. The amount of $370,000.00 the debtor listed for mortgages payable were clearly indicated on the statement as a $300,000.00 mortgage on the debtor's home and separate mortgages of $36,000.00 and $34,000.00 placed against two investment properties the debtor owned.

The debtor had advised Harris that the purpose of the loan was to secure cash to enable Career to pay its accounts payable due to the lag-time in the collection of its accounts receivable. The plaintiff approved a one-year loan of $30,000.00 rather than the $50,000.00 requested because Career's eligible accounts receivable totaled approximately $50,000.00, and the plaintiff decided to limit the size of the loan to 60% of eligible receivables. The plaintiff required the debtor's written guaranty and security interests in Career's accounts receivable and other Career assets.

The debtor's various businesses thereafter failed, and the debtor, together with his wife, filed a joint chapter 7 bankruptcy petition on April 6, 1990. At that time the unpaid principal balance of the guaranteed Career loan was $29,500.00.

The debtor's explanation at trial of why he failed to show the $190,000.00 guaranty obligations as secured by mortgages on his home was confusing and contradictory. He insisted, however, that he had not in-

---

1. *§ 523. Exceptions to discharge.*
   (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—
   . . . .
   (2) for money property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—. . . .
   (B) use of a statement in writing—
   (i) that is materially false;
   (ii) respecting the debtor's or an insider's financial condition;
   (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and
   (iv) that the debtor caused to be made or published with intent to deceive. . . .

tended to deceive the plaintiff, having fully disclosed on the statement the existence of these liabilities arising out of his ownership and operation of the Medtech and Penny Corner companies.

Scott W. Blois, one of the plaintiff's commercial loan officers, testified that he relied upon the Medtech and Penny Corner obligations being unsecured, and that he would not have approved the loan had he known otherwise. Blois had prepared a written "loan presentation" (presentation) to support the granting of the loan to Career. The presentation commented favorably upon Career's four-month record of operation, its financial prospects, and included a review of the debtor's financial condition. It stated the debtor had a net worth of $715,000.00, rather than the $542,500.00 indicated by the debtor's statement ($1,117,500 − $575,000 = $542,500). This difference was due to Blois excluding the debtor's liability as guarantor of the $190,000.00 obligations of Penny Corner and Medtech from the net worth computation, although the presentation fully described their existence. Furthermore, while the debtor had disclosed on his statement that his home, valued at $425,000.00, was owned by him jointly with his wife, the presentation ascribed the entire $425,000.00 value to the debtor's net worth. The plaintiff made no effort to verify any of the values placed by the debtor on the assets he listed in his statement. Gary R. Green, another of the plaintiff's loan officers, also testified that he relied on the debtor's guaranty of $190,000.00 in obligations of the debtor's other companies as being unsecured when he approved the loan.

The presentation stated that the debtor's tax returns had been consulted and a favorable personal credit report on the debtor obtained. It concluded with the following recommendation:

> This loan is recommended based on the good track record of Tom Kayser in the recruiting business, good loan to value ratio, perceived ability of management to operate the company profitably, and the favorable personal financial condition and credit history of Mr. Kayser.

Plaintiff's Exhibit B, at 6.

## III.

## DISCUSSION

■ The considerable burdens on a creditor to establish the nondischargeability of a debt are firmly established. The policy of bankruptcy legislation to provide an individual debtor with a fresh start requires that discharge provisions be construed liberally in favor of the debtor; and, at least where the fraud nondischargeability provisions of Code § 523(a) are involved, the creditor must prove each statutory element by clear and convincing evidence. If a creditor fails in any one element, he cannot prevail. *Afsharnia v. Roland (In re Roland),* 65 B.R. 1003, 1006 (Bankr.D.Conn. 1986); *Whitney Nat'l Bank v. Delano (In re Delano),* 50 B.R. 613, 617 (Bankr.D. Mass.1985).

■ With these standards in mind, I find that the plaintiff has not carried its burden of persuasion that the falsehood that $190,000.00 of the debtor's obligations were unsecured when they were in fact secured was either material or something upon which the plaintiff reasonably relied. The requirement of § 523(a)(2)(B)(i) that the false statement be "materially false" appears to be closely related to the requirement of § 523(a)(2)(B)(iii), that the falsity be "reasonably relied" on by the creditor. *Landmark Leasing, Inc. v. Martz (In re Martz),* 88 B.R. 663, 672 (Bankr.E.D.Pa. 1988). "A materially false statement is one which paints a substantially untruthful picture of financial condition by misrepresenting information of the type which would normally affect the decision to grant credit." *In re Delano, supra,* at 617. Reasonable reliance on a financial statement is shown by establishing that a "lender would not have extended credit had accurate information been provided or that statement was contributory cause of extension of credit." *Kunzler v. Bundy (In re Bundy),* 95 B.R. 1004, 1009 (Bankr.W.D.Mo.1989).

Notwithstanding the plaintiff's contention that the unsecured status of the debtor's $190,000.00 guaranty obligations was a material part of its decision to make the loan, the record made does not support that conclusion. The presentation states that the loan's prime repayment source was to be the plaintiff's senior secured status in Career's accounts receivable. The plaintiff, who was furnished with complete information as to the debtor's total assets and total liabilities, decided on its own that the debtor had a net worth of $715,000.00 with which to cover a relatively modest $30,000.00 guaranty. The plaintiff deliberately excluded the $190,000.00 guaranty obligations of the debtor's other businesses from its calculation of net worth, so as to make it not material whether the $190,000.00 obligations were secured obligations or not. *Cf. In re Delano, supra,* at 617–18, (Omissions of liabilities in the amount of about $136,000.00 from financial statements were substantial, but were not necessarily materially false so as to warrant exception from discharge where debtor would have substantial net worth of $235,000.00 and debtor guaranteed loans totalling $115,000.00.). In addition, in order to calculate the debtor's $715,000.00 net worth, the plaintiff ignored the information received from the debtor that he owned only a half interest in his home.

The plaintiff relied upon its secured status with Career's eligible receivables, its examination of the debtor's tax return, its receipt of a favorable credit report on the debtor, and its own estimation of the debtor's net worth. The plaintiff's decision not to take a secured position on the debtor's assets further militates against a finding of materiality of or reliance upon the debtor's falsehood. The plaintiff's loan officers should have been well aware that, in Connecticut, any unsecured creditor can easily turn itself into a secured creditor by means of Connecticut's statutory attachment process.

No court condones falseness in a financial statement submitted to secure credit, but the Bankruptcy Code provides that a creditor is not entitled to prevail on a nondischargeability complaint when it is unable to establish a causal connection between the debtor's false statement and the granting of the loan.

## IV.

## CONCLUSION

The debt of Thomas G. Kayser, the debtor, to People's Bank, the plaintiff, is discharged, and judgment may so enter.